ACME FLEXIBLE CLASP CO. v. CARY MFG. CO.

(Circuit Court, S. D. New York. July 29, 1899.)

1. PATENTS—CONSTRUCTION OF CLAIMS—ESTOPPEL OF PATENTEE.
   Where two of the three claims of an application were rejected, leaving the third to stand without modification, and this action was acquiesced in by the patentee, *held*, that a mere remark by the examiner in the course of the proceedings that there did not appear to be any material difference in the claims did not estop the patentee from claiming the construction shown by the specification and claim allowed, or limit him to a construction embracing only what was shown by the rejected claims.

2. SAME—ANTICIPATION—PRIOR USE.
   Under Rev. St. §§ 4886, 4923, the mere secret practice of a process or the physical presence of a product or manufacture in this country is insufficient as an anticipation unless and until the public acquires or has opportunity to acquire therefrom such knowledge as would enable one skilled in the art to practice the invention. Such alleged anticipations, whether by foreign printed publication or physical presence in this country, must so embody the complete patented article, or be so substantially like it, that a specification could be based thereon.

3. SAME—STAPLE FASTENER FOR WOODEN VESSELS.
   The Swett patent, No. 314,204, for a staple fastener for wooden vessels, construed, and *held* not anticipated, valid, and infringed.

This was a suit in equity by the Acme Flexible Clasp Company against the Cary Manufacturing Company for alleged infringement of a patent for a staple fastener for wooden vessels.

Dyrenforth & Dyrenforth and W. A. Redding, for complainant.
A. G. N. Vermilya, for defendant.

TOWNSEND, District Judge. Final hearing on usual bill and answer, raising questions of validity and infringement of patent No. 314,204, issued March 17, 1885, to William O. Swett, complainant's

assignor, for a staple fastener for wooden vessels.    The single claim thereof is as follows:

"A fastener for securing wooden package covers, formed of a single piece of metal, with tapered shanks, D, and a thin metal plate, A, which is thick enough at its junction with bases, C, of shanks, D, to form heads, B, for driving the shanks, D, in the wood, as specified."

The fastener is in the form of a double-pointed staple, so thick at the corners as to furnish sufficient heads for the shanks, and so thin in the center as to be nonelastic, and easily bent over the corners of the wooden box.    The specification says:

"The invention consists in a staple whose pointed shanks are projections from a plate which is made so thin at its middle portion as practically to be nonelastic, whereby the shanks, which are driven into the wood, will not be drawn out by the spring of the metal, and at the same time the thickness of the connecting plate shall not be such as to interfere when storing or handling fastened packages, or the shanks be removed by contact with other articles."

By this unique construction of a double-pointed staple the inventor so successfully accomplished the object of his invention that his sales amount to 60,000,000 a year, and for 13 years the public have acquiesced in the validity of his patent, except in a single instance, where this defendant co-operated with complainant in successfully stopping infringement by threat of suit.

The defendant manufactures an infringing staple under a patent issued to its president June 22, 1897.    Said staple is practically identical in construction with that of complainant, except that the middle piece of metal is split and spread apart instead of being flattened.    Its purpose and use is the same as that of complainant, as appears from the following statement in the specification:

"Generally, in such uses, the clasp must be bent over a corner, and the end or ends driven into the wood of the parts to be secured together.    It is therefore important that the end of the tang or prong to be driven should be sharp; that the body of said prong should be stiff enough to penetrate the wood without bending; that the part immediately adjacent to the prong should be of sufficient body to constitute a good driving surface; that the remainder of the body intermediate the ends should be wide enough to make a good bearing surface where it rests against the parts to be secured, and should also be flexible enough to bend readily at almost any point intermediate the prongs (if there are two), that it may be easily applied to the intended use."

The defenses alleged are as follows:    (1) Limitation of the claim by proceedings in the patent office, and denial of infringement by reason thereof; (2) denial of invention in view of the prior art; (3) anticipation.

There is nothing in the first point.    All that Swett, the patentee, did, was to acquiesce in the action of the patent office in rejecting two of his three claims, leaving the second claim exactly as it was originally drawn.    A mere remark of the examiner, "It is not seen that there is any material difference in the claims," does not estop the patentee from claiming the construction shown by the specification and original claim.    It is the construction of the patent as finally issued which is to be considered.    Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 10 C. C. A. 194, 61 Fed. 958.    Defendant says that, because the examiner, in rejecting the other claims,

said they were the same as the claim allowed, and because one of the rejected claims was for a staple whose plate was "formed of less metal in cross section than the adjoining parts," complainant is limited to that construction of the claim allowed, and because splitting the metal in defendant's staple does not cause it to have less metal in the center, defendant does not infringe. There is no law to justify, and no proof to support, this contention. The utmost that can be argued as to this latter point is that Swett, in his specification, stated as a preferred construction one where there was not so much metal in cross section as at the heads of the pointed shanks.

In support of the defense of lack of patentable novelty in view of the prior art defendant has cited five patents. The Barney and Butterfield patent of 1874 had no thin shank, and did not have to be bent. The earlier patent to Carey, the president of the defendant corporation, issued in 1876, had none of the material elements of the patent in suit, and was not intended to be bent. The Winne patent of 1878, for a fastener for barrel hoops and heads, contains no hint of the patented invention; and Willard's patent of 1884 was for the combination of two nails with a piece of wire having eyes in its ends. Patent No. 244,282, issued to Moore in 1881, was cited by the patent office in rejecting claims 1 and 3. Counsel for defendant insists that the only difference between complainant's device and that of Moore is that the latter is not in one piece. Moore's tub fastener consisted of "a strip of tin or other suitable sheet metal into opposite ends of which are inserted headed nails," and a fold-over strip to keep the nails from falling out, "for fastening the covers of butter tubs." It was not made in a single piece; it was not adapted to the purposes of the patented staple; it was not so constructed as to be nonelastic, so that the shanks should not be drawn out by the spring of the metal, and the plate was not so thickened at the bases of the shanks as to form driving heads. This device has no bearing on the novelty of the patent in suit.

The defense of anticipation is a substantial one, and deserves and has received exhaustive consideration. Two reputable disinterested tea merchants, Messrs. Hamilton and Mead, testify that small fasteners, which in general appearance and construction strikingly resemble the patented staple, were in use in this country, or were in the possession of the witnesses, prior to the date of the patent in suit. Hamilton says these fasteners were used in London prior to 1870 in securing parts of tea boxes together which were shipped to this country; that he came to this country in 1885, and saw tea boxes with fasteners in use which, to the best of his knowledge and belief, were the same to all practical purposes as those used in London; and that such fasteners were in general use in this country on tea chests which had come from China in 1874 or 1875. Mead says he is not familiar with the method of securing the parts of packages of tea together, but he produces three of these fasteners, which he testifies have been upon a tea chest during the whole time that it has been in his possession, a period of more than 17 years, and which he removed therefrom on the morning of his examination. He further says he has seen tea coopers use fasteners of somewhat similar make in coopering teas in this

country. Hamilton was not cross-examined. Mead testified on cross-examination that it was the usual custom to cover tea packages with paper or matting which entirely hid the joints, and any fastener employed at the joints. There is no reason to doubt that this testimony was given by disinterested intelligent witnesses who were seeking to state the facts exactly as they believed them to exist, and this evidence is to be accepted as true. The defendant claims that this evidence shows a prior public knowledge or use of the patented invention in this country. Why does the patent law provide that anticipation may be shown by a prior public use or knowledge in this country, but not in a foreign country, and that, in order to establish anticipation in a foreign country, a patent or printed publication must be proved? It seems clear that congress intended to benefit the American public by a grant of a patent to the individual who, believing himself to be the first inventor, was the first in fact to disclose such invention in this country. This is shown by a comparison of section 4923 with section 4886, of the Revised Statutes. I therefore understand the law on this subject to be that the mere secret practice of a process or the physical presence of a product or manufacture in this country is insufficient as an anticipation unless and until the public acquires, or has opportunity to acquire, therefrom such knowledge as would enable one skilled in the art to practice the invention. Such alleged anticipation, whether by foreign printed publication or physical presence in this country, must so embody the complete patented article, or be so substantially like it, that a specification could be based thereon. Draper v. Wattles, 7 Fed. Cas. 1061 (No. 4,073); Hays v. Sulsor, 11 Fed. Cas. 915 (No. 6,271); Whitney v. Emmett, 29 Fed. Cas. 1076 (No. 17,585). As Mr. Chief Justice Taney says in Gayler v. Wilder, 10 How. 497, "By knowledge and use the legislature meant knowledge and use  *  *  *  accessible to the public." It is the inventor who is the first to confer on the public in this country the benefit of the invention, who is entitled to a patent. This rule has been applied to a process in Boyd v. Cherry, 50 Fed. 279, and to a product in Matheson v. Campbell, 24 C. C. A. 384, 78 Fed. 914. "The knowledge and use of an invention in a foreign country by persons residing in this country will not defeat a patent which has here been granted to a bona fide patentee, who, at the time, was ignorant of the existence of the invention or its use abroad." Doyle v. Spaulding, 19 Fed. 744; Rob. Pat. § 315. Hamilton's knowledge of the use of Chinese staples in this country prior to the patent is so indefinite as to be insufficient, and his knowledge as to such use abroad is immaterial. Mead's testimony fails to show any material fact other than that the fasteners were removed that morning from a chest which had been in his possession for more than 17 years. It does not appear that he had ever seen said staples until the day of the hearing. He does not state when he has "seen tea coopers use fasteners of somewhat similar make in this country." The testimony of the two witnesses, taken together, shows that Mead had no knowledge of the practice followed in applying these fasteners, and that Hamilton is uncertain as to the construction of the earlier staples. How these alleged anticipating staples were originally made, or how

applied, does not appear; nor does it appear whether the flattened center was a feature of the original construction, or was due to the hammering when they were applied. In the latter case, as they would' not infringe if later, they would not anticipate. Because of the indefiniteness of this testimony, and because no tea chests and no practical tea coopers were introduced to show the facts essential to prove public knowledge and use, I am constrained to hold that this defense is not sufficiently proved to overthrow the presumption of the validity of this patent, which has been acquiesced in for 14 years. But, even if these witnesses had shown that tea chests fastened abroad with confessedly anticipating staples had been imported into this country prior to the date of this patent, I think, under the foregoing rules of law, such evidence would be insufficient to show anticipation, because it is admitted that it was the custom to cover packages containing such fasteners "before shipment to this country, and this covering entirely hid the joints, and any fasteners employed at the joints." It is clear that the public has derived the benefit of the knowledge of this invention from the patentee. It is not clear that any person ever knew of the existence in this country of the fasteners introduced as anticipations. The first knowledge proved to have existed in this country of the exact construction of these staples was when the witnesses recently removed them from tea chests. And, inasmuch as it was essential to establish such prior knowledge of construction, operation, and use as would be equivalent to the specifications of a patent, and such proof was not furnished, I think the defense is not sustained. The usual decree may be entered.