RAMSAY v. LYNN et al.

(Circuit Court, W. D. Pennsylvania. February 8, 1911.)

No. 5, November Term, 1909.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BRICK VENEERING APPARATUS.

The Ramsay patent, No. 685,410, for an apparatus for veneering brick, as they come from the brick machine, was not anticipated by patents in the prior art nor by prior use, but is novel and discloses invention, the device being one of great merit and value in the art; also *held* infringed.

In Equity. Suit by Andrew Ramsay against R. H. Lynn and others. On final hearing. Decree for complainant.

Bakewell & Byrnes, for complainant.
F. W. Winter, for defendants.

YOUNG, District Judge. The patent involved in this case was issued to Andrew Ramsay, dated October 29, 1901, and is No. 685,410, for an apparatus for veneering brick. Only two of the six claims of the patent, the first and second, are in controversy. The defenses set up are want of novelty and noninfringement. The defense of want of novelty will be first considered. This defense may be subdivided for convenience of consideration into two inquiries as to the state of the prior art (a) as shown by certain patents, foreign and domestic, pleaded and offered in evidence; and (b) discovery and use of apparatus similar to that involved in the Ramsay patent prior to his application for a patent.

It becomes necessary to the proper consideration of the case under this defense of prior art to first determine exactly what Ramsay's patent covers. Ramsay asserts in his specification that prior to the invention by him in the process of enameling bricks the bricks were coated by dipping them by hand in a liquid coating material, allowing that to dry, and again and again repeating the process until they were coated sufficiently thick. The thing desired in the enameling of bricks was to avoid the above objectionable methods, not only because of the time consumed by the repeated process, but because of the thinness of the coating thereby obtained, and because the coating does not adhere to the bricks firmly enough to withstand the pressure and use to which bricks are ordinarily subjected. The complainant claimed to have discovered the process and to have invented the apparatus by which this could be accomplished by a single operation, and that is by placing upon the "clay bar" as it emerges from the brick machine a quantity of plastic engobe which would be carried along by the moving clay bar and under a slicker beveled or inclined at an angle to the clay bar. He took the ordinary brick machine, and placed in front of the final forming or shaping die thereof, at a sufficient distance for the placing of the plastic engobe upon the exposed clay bar as it emerged from the brick machine, an engobe applying slicker or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

die having an inclined or beveled surface adjacent to the clay bar. This invention he embodied in the first claim, which is:

"1. In apparatus for coating or veneering bricks or other articles of clay, the combination with a final shaping die of a brick machine, through which a clay bar is caused to issue, of an engobe applying slicker or die, whose rear end is separated from and is in front of said shaping die, so as to leave one surface of the clay bar entirely exposed and thereby adapting it to sustain the engobe in a thick plastic condition, the said slicker having an inclined or beveled surface adjacent to the clay bar."

In his specification he shows three other slickers, 6, 7, and 8, which are to be used for "smoothing, roughening, grooving or corrugating the surface of the clay bar prior to the application of the engobe," and it is argued by counsel for defendant that the expression in the claim "final shaping die" means the slickers 6, 7, and 8 placed between the engobe applying slicker and the forming die of the brick machine. We have carefully considered the specification and the defendant's expert Wadsworth's opinion thereon, and we cannot so construe the patent. It is clear from the patent that the slickers 6, 7, and 8 were to be placed close to the forming die of the brick machine, and were to be used for preparing the clay bar after it passed the forming die of the brick machine for the reception of the engobe, and that one or more of them might be dispensed with or an additional number used. We conclude that the final shaping die as used in the claim means the die placed within the brick machine and forming a part of it. The first claim, then, is to be interpreted as the combination with a brick machine through which a clay bar is caused to pass, of an engobe applying slicker or die in front of and supported over the brick machine, and at such a distance from the machine as to permit the engobe to be applied in a plastic condition upon the exposed surface of the bar, so that the clay bar will carry the engobe forward and under the beveled slicker. It may be remarked that the hopper 12, by means of which the engobe might be applied to the clay bar, is not an element in this claim of the patent, because in the specification, where alone it is suggested, it does not appear as an element necessary to the apparatus. Nor does the mention in the specification at all narrow the claim so as to require its use in constructing the apparatus. In this apparatus Ramsay also in his specification suggested the use of "a table or laterally expanding shelf 11, at the point where the bar 5 is exposed."

Claim 2 is for the combination described in claim 1, "and an engobe supporting table located between the discharge end of said machine and said slicker and projecting laterally beyond the sides of the clay bar." This table or ledge was evidently necessary for the support of the engobe before it passed under the engobe applying slicker, so that the entire surface laterally of the clay bar to the edge of the bar might be covered by the enameling substance, and also when it was desired to cover the sides of the bar by being placed below the level of the clay bar. While not necessary to the enameling of the top of the clay bar as set forth in the first claim, it was necessary to the completion and perfect covering of the clay bar to the edge. The second claim

of the patent, therefore, must be interpreted as containing this table or ledge as a necessary element in the complete apparatus.

·This patent then as construed must be considered in the light of the prior art, and first, as to the alleged prior patents. The patents pleaded and offered in evidence by defendant are both foreign and domestic patents, and for convenience we shall adopt the division made by complainant's expert Richardson in discussing them, as this classification was followed by counsel for complainant and adopted by counsel for defendant in the discussion of the case. In order to a clear understanding of this subdivision, we quote the evidence of this expert beginning on page 82 of complainant's record:

"These prior art patents may be divided into four classes: (1) Those relating to brick-making machines; (2) those relating to apparatus for sanding a clay bar or column as it comes from the die of the brick-making machine; (3) those that relate to apparatus for veneering other substances than clay; (4) those relating to apparatus or means for veneering a continuous moving column of clay after it issues from the forming or shaping die of the brick machine. This class 4 may be subdivided as follows: (a) Those machines applying the veneer as a creamy liquid; (b) those machines applying the veneer as a thick paste."

We may dispense with the patents coming under class (3) for two reasons: First, because the evidence of the experts and an examination of the patents show that there was nothing in them to suggest to a person skilled in the art of brick making the discovery; second, because they were patents for inventions not in the art of brick making but in analogous arts. Mr. Justice Brown in Potts v. Creager, 155 U. S. 597, on page 604, 15 Sup. Ct. 194, on page 198 (39 L. Ed. 275), has stated the doctrine which we think applies to this branch of the case. He says:

"Indeed, it often requires as acute a perception of the relation between cause and effect and as much of the peculiar intuitive genius which is a characteristic of great inventors to grasp the idea that a device used in one art may be·available in another as would be necessary to create the device de novo. And this is not the less true if, after the thing has been done, it appears to the ordinary mind so simple as to excite wonder that it was not thought of before. The apparent simplicity of a new device often leads an inexperienced person to think that it would have occurred to any one familiar with· the subject; but the decisive answer is that, with dozens and perhaps hundreds of others laboring in the same field, it had never occurred to any one before. The practiced eye of an ordinary mechanic may be safely trusted to see what ought to be apparent to every one. As was said by Mr. Justice Bradley, in Loom Company v. Higgins, 105 U. S. 580, 591 [26 L. Ed. 1177]: 'Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that, if a new combination and arrangement of known elements produce a new and beneficial result never attained before, it is evidence of invention.' "

Those patents coming under the first subdivision may also be readily disposed of, as they were clearly patents relating to brick machines, and in·no sense relative to the art of enameling or otherwise treating the product of the brick machines after the clay bar emerged from the machine. An examination of these patents also conclusively shows that there was nothing in them to suggest the discovery and invention of Ramsay.

The second division relates to the apparatus for sanding the clay bar as it comes from the brick machines. The patents presented under this division are those of Mendhan, No. 207,293, of August, 20, 1878; Gard, No. 255,385, of March 21, 1882; and Roll, No. 414,329, of November 5, 1889. An examination of these patents also leads to the conclusion that they would not suggest to one skilled in the art the application of a plastic material to the clay bar and the use of a beveled slicker so as to cause the plastic engobe at one operation to adhere to the surface.

This leaves for consideration only the fourth class—those relating to apparatus or means for veneering a continuous moving column of clay after it issues from the forming or shaping die of the brick machine. This class may be subdivided, as suggested by the expert Richardson, into (a) those machines applying the veneer as a creamy liquid; and (b) those machines applying the veneer as a thick paste. To subdivision "a" belong Du Rant's patent, No. 677,861, of July 9, 1901, and Pearson's British patent, No. 3,820, and were for the application of the veneer in a thin slip. In the Pearson patent the veneer was applied within the brick machine without affording any view of the clay bar, thus depriving the operator of the opportunity to determine before the veneer was applied whether the bar was ready for the veneer, a most important and valuable part of the Ramsay invention. And, also, the veneer was applied in liquid form and rubbed in with brushes. The Pearson invention does not suggest the application of the veneer in such a way as that invented by Ramsay and desired by the brick manufacturers, to wit, the placing upon the bar of a plastic material, which could be used without waste and the obtaining by one operation a veneering of the desired thickness. There is nothing to suggest this in the Pearson patent and nothing to suggest fixing the veneer upon the moving clay bar by the slicker. The Pearson patent was not an anticipation of the Ramsay patent. Much less is the Du Rant patent. The view taken by Richardson, complainant's expert, on page 93 of complainant's record of the Du Rant and Pearson patents, covers the whole matter, and his views are summarized by him in the following expression:

"Hence there are no features in these two patents that would be applicable as forming a veneering coat or the body coat of an enamel, such products as are produced by the Ramsay process."

This brings us to the only remaining patents, which are included in subdivision "b" and are the following patents: Naumann's British patent No. 9,039; Anton Heber, German patent No. 18,277; Heber & Co.'s modification of the preceding German patent No. 32,979; Englehart, Graf Wolkenstein, German patent No. 61,196; Becker, German patent No. 71,181; Kaufmann, German patent No. 75,082; Pollock, German patent No. 93,399. In all of these patents the veneer is applied before the clay bar is brought to view. It is applied within the brick machine and before the clay passes through the forming die of the brick machine. This in our opinion is one of the most valuable features of the Ramsay patent.

While we are of the opinion that none of the foregoing patents reveal to one skilled in the art the discovery afterwards made by Ramsay, yet, were they even more suggestive than they are, it seems to us that we should apply the principle heretofore referred to and which is so well established in a multitude of cases. It is most concisely formulated in Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177:

"Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that, if a new combination and arrangement of known elements produce a new and beneficial result never obtained before, it is evidence of invention."

This invention is one of great merit. It had been a thing desired in the art of brick making to find a way by which the hand method of dipping and the other methods of applying the enameling material in a thin slip could be dispensed with, so that waste of time and large expense could be avoided, and it was desired that a means be devised to accomplish the enameling to the desired thickness inexpensively and by a single operation. This was accomplished by Ramsay, and the invention produced a new and beneficial result.

We now pass to the consideration of the discovery and use of apparatus similar to that involved in the Ramsay patent prior to his application. This is based upon the evidence of the defendant Lynn and two other witnesses, Wentz and Woodell. This evidence is to be measured by the rule laid down in Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017, where the court, after pointing out that the grant of a patent is prima facie evidence that the patent was the first invention and of the novelty of the patented invention, said:

"Not only is the burden of proof to make good this defense upon the party setting it up, but it has been held that 'every reasonable doubt should be resolved against him.'"

Measured by this rule, an inspection of the evidence will show that it falls far short of its demands. The device used by Lynn was of the crudest nature. He himself did not regard it as adapted to the making of veneered or enameled brick. On page 123 of defendant's record he was asked:

"R. D. Q. 364. If you had been asked while you were with Reed and Ettla to make what are now known as true enameled or veneered brick by means of your slicker, would you have been able to do so? A. No, sir."

Reed and Ettla, the owners of the brickworks where the alleged invention was used, had no knowledge of it, although they were constantly about the works, and were experimenting for the purpose of arriving at such a result. It clearly appears from the evidence that the use was an incidental or casual one. The principle covering such use is well defined by Judge Archbald in Anthracite Separator Company v. Pollock (C. C.) 175 Fed. 108:

"A prior use, in order to negative novelty, must be something more than an accidental or casual one. It must, indeed, be so far understood and practiced, or persisted in, as to contribute to the sum of human knowledge and be accessible to the public, becoming an established fact in the art. Gayler v. Wilder, 10 How. 477, 497, 13 L. Ed. 504; Tilghman v. Proctor, 102 U. S. 707,

26 L. Ed. 279; Acme Flexible Clasp Co. v. Cary Mfg. Co. (C. C.) 96 Fed. 344: Ajax Metal Co. v. Brady Brass Co. (C. C.) 155 Fed. 409. There is not the remotest approach to anything of that kind here. No doubt, as already stated, there was a conforming structure with a somewhat similar function. and, looking back with the light which we now have, we are able to see that the parties had the device of the patent almost, if not quite, in hand. But they did not follow it up as they should, and, stopping short where the present inventor went on, it cannot be brought in now to anticipate and defeat what he has successfully achieved by himself."

We are therefore of the opinion that this patent was not anticipated by Lynn, and this is the only prior use set up or attempted to be proven. Altogether, then, we are satisfied that no priority has been shown either by patents or use and Ramsay must be regarded as the first inventor of the apparatus.

We now pass to the second defense, that of noninfringement. This defense can be disposed of in a few words. The difference between the apparatus used by the defendant and the Ramsay apparatus is very slight. The defendant uses two engobe applying slickers which are placed in front of the brick machine at a sufficient distance from the beveled shaping die of the machine to permit the clay bar to be seen and to allow the plastic engobe to be placed by hand upon the bar. The slickers are thus placed and beveled just as in the Ramsay apparatus. The engobe is applied the same way and is caused to adhere to the clay bar in the same way as in the Ramsay apparatus. The only difference seems to be that the slickers, instead of being fixed, are adjusted by springs so as to regulate the space between the slickers and the clay bar. This may be an improvement on the Ramsay invention, but such improvement will not justify the use of the Ramsay invention. Clearly the defendants have infringed the complainant's patent as to its first claim.

The same may be said as to the second claim. True they do not use the side table, but they clearly use its equivalent in placing movable hopper plates beside the clay bar which act as a support for the engobe when it is desired to cover the top or sides of the clay bar. So that the defendants clearly infringe the second claim of the Ramsay patent. A most casual examination and comparison of Ramsay's and defendants' apparatus without the aid of experts shows their entire similarity, and that the defendants have infringed. The Ramsay invention is one new in the art of brick making. It is most useful and adds greatly to the process of enameling brick. Its commercial success is abundantly shown by the evidence. The defendants, therefore, must be adjudged to have infringed complainant's patent, and they should be restrained from further infringement, and should be assessed such damages as in equity should be placed upon them.

Let a decree be drawn accordingly.