LETSON et al. v. ALASKA PACKERS' ASS'N.

ALASKA PACKERS' ASS'N v. LETSON et al.

(Circuit Court of Appeals, Ninth Circuit. March 1, 1904.)

No. 944.

1. PATENTS—INFRINGEMENT—CAN-CAPPING MACHINE.

The Jensen patent, No. 376,804, for a can-capping machine, was not for a pioneer invention, in the sense that the machine was the very first to accomplish the heading of filled cans, yet such machine was the first to accomplish that result with any practicable degree of speed or efficacy, and the claims of the patent are entitled to a fairly liberal construction Claims 3, 5, 9, 10, and 11 *held* infringed by the machine of the Letson & Burpee patent; No. 629,574, and claim 1 *held* not infringed.

130 F.—9

**3. SAME—EQUIVALENT DEVICES.**

The fact that an alleged infringing mechanical device lacks one of the functions of the patented device does not avoid infringement, where such function is not claimed in the patent.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

For opinion below, see 119 Fed. 599.

These are cross-appeals from the decree of the Circuit Court for the District of Washington rendered in a suit brought by the Alaska Packers' Association, hereinafter designated the appellee, against the firm of Letson & Burpee, hereinafter designated the appellants, for infringement of letters patent No. 376,-804, dated January 24, 1888, issued to Matthias Jensen, for an improvement in can-capping machines. Claims 1, 3, 5, 9, 10, and 11 were alleged to be infringed. The trial court found that claims 5, 9, and 10 were infringed, and that the other claims were not infringed. The appellee was the assignee of the patent above referred to, and extensively used and manufactured the machines covered thereby. The appellants obtained on July 25, 1899, 11 years after the issuance of the Jensen patent, a patent for a can-capping machine (patent No. 629,574), and thereunder manufactured the machines which are charged to be infringements of the Jensen patent. The validity of all the claims of the Jensen patent is admitted. The sole defense of the appellants is noninfringement.

The operation of the Jensen machine is best illustrated by the cuts which were admitted in evidence. In cut I, "Jensen's Can-Feeding Mechanism," the endless traveling belt is designated by the letter A. The filled cans are placed upon it in a vertical position. The belt passes around drums at each end, the drums being operated by appropriate mechanism. The device marked, j, j, described in the patent as arms, are used as spacing devices for the cans. They allow them to move forward so as to arrive at the feeder in proper time to be received by it and carried forward. The arms which are connected together by the chain, k, have an intermittent motion back and forth in the direction of the belt. The letter E designates the transverse stop, consisting of a stationary bar, which arrests the forward progress of the can. The next element is the feeding device, which receives the can where it is stopped in its forward movement, and transfers it from the belt to the capping mechanism, which is shown in the cut marked II, "Jensen's Feeder," where it is designated by the letter F. It consists of a transverse bar, with four arms at right angles thereto, the arms being marked by the letter H. The capping mechanism of the feeder consists of three cranks, lettered J, J, J, operated by a mechanism which imparts a circular, sweeping motion to the feeder. The can is first received between the first two arms of the feeder, and is swept off the belt by the circular, sweeping motion of the feeder, and is left on the table to be further moved by the second motion of the feeder, which grasps it between the second two arms, and places it on the lower plunger, beneath the capping mechanism. The cut III, "Jensen's Cap Feeding Mechanism," shows the apparatus for feeding the caps. Caps are placed on an angular chute, designated by the letter Q. At the bottom of the chute is a spring arm, P, which stops the caps and prevents their further movement down the chute until the proper time for releasing them. The letter N designates a trigger placed directly within the line of the travel of the moving cans, and attached to an arm, O, projecting upwardly so that, when the trigger is pressed by the can, the arm, O, pushes back the spring arm, P, and releases the cap which rests against it. By this mechanism each can body releases its own cap. The cap is then grasped by other mechanism and carried into the capping mechanism. The capping mechanism consists of a lower plunger, upon which the can is delivered from the feeder; above it, a conical guide, within which the upper end of the can is forced; two slides, adapted to move towards each other transversely, having their ends shaped in a semicircle, so that when they come together they form a complete circular space. An annular rim is cut in the face of these slides, in which the capping fits and rests. When the can is placed on the lower plunger, the plunger rises by appropriate mechanism,

pushes the upper end of the can through the conical guide which serves to size the upper end of the can in perfect alignment for the caps, and inserts the can in the cap. An upper plunger holds the cap in place, and, after the can is capped, descends on top of the can, holding it steady, while the semicircular slides recede and allow the capped can to pass through the conical guide and descend to the table where it is grasped between the last two arms of the feeder and carried to the crimping mechanism. In cut IV, "Jensen's Capping Mechanism," the lower plunger is marked S. Directly above it is the conical guide, marked T', T'. Immediately above the conical guide are the transversely moving slides, T, T. The upper plunger is marked U.

The appellants' machine is described as follows: Cut V, "Letson & Burpee Can-Feeding Mechanism," shows that combination of the machine which delivers the cans to the feeder. 59 is the endless traveling belt. B, B, are the cans resting thereon. The devices marked 79, 79, are the spacing devices separating the cans, and regulating their direction to the feeder. The device marked 36 is a recessed wheel on a spindle, and rotating across the surface of the belt. When the can reaches the wheel, it is caught in one of the recesses of the wheel as it rotates, and is thereby removed from the belt into a circular guideway, shown in the drawing, and is carried along the guideway to a disk which is the upper surface of the lower plunger. Cut VI shows the appellants' mechanism for delivering the caps. The caps are carried by an endless horizontal belt. Letter N represents the trigger in the path of the moving cans. The trigger is connected with a stop which restrains the caps on the carrying belt. When the can strikes the trigger the stop releases the cap, and the carrying belt carries the released cap to a device which places it on the capping mechanism. Cut VII shows the appellants' can-capping mechanism. The feeder, 36, is represented as having placed a can on the lower plunger. The plunger represented by the figure 19 consists of a disk on which the can rests, and a spindle passing loosely through a vertical hole in the rotating arm 14a. The bottom of the spindle moves on the stationary cam face, 46, which is an inclined plane. As the spindle moves on the cam, it is pushed upward through the conical guide, 21. Immediately above the conical guide are three transversely moving slides for holding caps. Above these slides is a second plunger, 26, called a "cap presser."

The claims of the appellee's patent which are alleged to be infringed are the following:

"(1) An endless traveling carrying-belt, a stop, E, extending across it to change the direction of the cans, and arms swinging over the belt, whereby the delivery of the cans from the belt to the feeder is rendered exact, substantially as herein described."

"(3) In combination with a transverse belt, the feeder having the projecting arms between which the cans are received from the belt and the actuating devices by which the motions of the feeder are produced, substantially as herein described."

"(5) The inclined chute into which the caps are placed, and a stop extending across said chute, so as to prevent the caps from moving downwards, in combination with a trigger extending across the path of the cans as they are moved toward the capping table, said trigger being connected with the stop, so that, as it is moved backward by the passage of the can, it withdraws the stop to allow a cap to move down the chute, substantially as herein described."

"(9) The vertically moving plunger upon which the cans are delivered by the feeder, in combination with the conical guide situated above the cans, and the transversely moving slides upon which the caps are received and held, with a mechanism by which the slides are withdrawn as the can enters the cap, substantially as herein described.

"(10) The vertically moving plunger by which the can is raised to receive the cap, and the guide into which the upper end of the can enters the transversely moving cap-holding slides, in combination with the second plunger moving vertically above the cap, and following it down by gravitation or otherwise, so as to steady the can in its descent after the cap has been applied, substantially as herein described.

"(11) The vertically moving plunger upon which the can is received, a carrier for placing the can upon the plunger, and a mechanism by which this

plunger is reciprocated vertically in combination with a second plunger, which rests upon the top of the cap, and steadies it while descending, and a mechanism for raising the second plunger before the arrival of the next cap, substantially as herein described."

The following are the cuts referred to in the statement:

## CUT I.

### Jensen's Can-feeding Mechanism.

## CUT II.

### Jensen's Feeder.

## CUT III.

### Jensen's Cap-feeding Mechanism.

# CUT IV.

## Jensen's Capping Mechanism.

## CUT V.

### Letson & Burpee's Can-feeding Mechanism.

## CUT VI.

### Letson & Burpee's Cap-feeding Mechanism.

## CUT VII.

### Letson & Burpee's Can-capping Mechanism.

M. A. Wheaton, I. M. Kalloch, Jas. A. Kerr, and E. S. McCord, for appellants.

John H. Miller and Dorr & Hadley, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Before discussing the question of infringement, it is important to determine the nature of the Jensen invention, and to ascertain how far the claims thereof are affected by the prior state of the art. The appellee contends that prior to that invention there was no automatic machine known or in existence which would successfully place caps on filled cans, and that, Jensen being the first in the art to devise a machine capable of performing that operation, his invention is pioneer in its character, and entitled to a broad construction. The appellants, on the other hand, contend that Jensen used devices and apparatus which' had been in use in well-known prior can-heading machines, and that in his combination he did not produce any new ultimate result, and that his machine is not a pioneer can-heading machine. In that connection the appellants refer to the Edmund Jordan patent, No. 307,197, dated October 28, 1884, and to the George A. Marsh patent, No. 265,617, dated October 10, 1882. The first of these patents describes a machine having a segmental clamp chuck mounted on a vertical shaft controlled by a mechanism which gives it two motions—one horizontal, the other vertical. The chuck is composed of segments operated by a spring; the segments, when brought together, forming a circle, with a beveled mouth below, and an annular space at the top. It has two rotating tables—one for the purpose of feeding the cans; the other, for the purpose of feeding the caps. Cans and caps are placed on these tables by hand. The clamp chuck grasps a cap, swings over the can body, and places the cap thereon. The functions of this machine, as described in the claims, are: "First, to receive and retain a can cap; second, to grasp and hold the body of the can in a proper position; third, to force the cap of the can on the body; fourth, to release the headed can when these operations are completed. The Marsh invention is not automatic. It is a contrivance to be placed on a bench and operated by hand or by a treadle. Caps and cans are placed in position by hand. It contains a conical guide for inserting the upper end of the can into the cap. The Jensen machine contains an endless can-feeding belt for carrying the cans to the machine; arms swinging over the belt to regulate the direction of the cans to the feeder; a stop fixed transversely across the belt to arrest the forward motion of the cans, and change their direction; a feeder, which, by a circular, sweeping motion, transfers the cans from the belt to the capping mechanism; a cap-feeding device, consisting of an inclined chute, and mechanism for supplying the caps one by one; a mechanism whereby each can releases its own cap, consisting of a stop in the cap chute; a trigger in the path of the cans, so arranged that the can operates the trigger and releases its cap; and a can-capping mechanism, consisting of two vertical reciprocating plungers, a conical guide for sizing the upper end of the can body, and transversely moving capping holding slides. The Jensen patent has

been before this court in prior litigation. In the first suit, which was brought against Jensen by Norton Bros., assignees of the Jordan patent, above referred to, it was held that the Jensen machine was an infringement on the Jordan primary patent, No. 267,014; the court holding in that case that the Jordan patent covered an invention of a pioneer character. Norton et al. v. Jensen et al., 49 Fed. 859, 1 C. C. A. 452. But in the suit brought by the Norton Bros. against Milton A. Wheaton, in which the complainants contended that a machine made by the latter infringed the Jordan patent, No. 267,014, it was held by this court, upon a full and complete showing of the state of the art, which had not been made in the case against Jensen, that the Jordan patent was not of a pioneer character, but was merely an improvement on prior devices. Wheaton v. Norton et al., 70 Fed. 833, 17 C. C. A. 447. It seems to be a fact established by the evidence now before us that, while the Jordan machine was slow and cumbersome, and was not adapted to extensive or rapid use in putting heads on unfilled cans, and was not, in practice, used at all for capping filled cans, it might nevertheless to some extent, at ·least, have been used for that purpose. So that while it cannot be said that the Jensen machine was a pioneer patent, in the sense that it was the very first to accomplish the result of heading filled cans, Jensen nevertheless was the first to successfully head filled cans with any practicable degree of speed or efficacy. He brought to success what prior inventors had essayed, and but very imperfectly accomplished. In so doing he adopted some devices that had been used before, combined them with others that had not been used, and added the necessary elements to make a practical and successful machine. His combination and invention was, we think, more than a mere improvement or perfection of what had preceded it. It was of such novelty and importance as to constitute a distinct step in the progress of the art, and it went into immediate and extensive use. Its claims are therefore entitled to a fairly liberal construction. Morley Machine Co. v. Lancaster, 129 U. S. 263, 273, 9 Sup. Ct. 299, 32 L. Ed. 715.

Considering seriatim the claims which are alleged to be infringed, we find in the first an endless traveling belt, a stop extending transversely across the belt, and spacing bars or arms swinging over the belt. This is a subcombination which accomplishes the preliminary step in the general operation of the machine by introducing the cans one by one into the heading machine. It is a combination of devices well known in machinery. The appellants contend that in their machine one element of this combination is omitted, namely, the stop, E, extending across the belt to change the direction of the cans. The appellee admits that the appellants' machine does not contain the stop bar, E, but contends that the device referred to in its claim as a stop is not limited to the form of stop specified, but includes and covers any form of stopping device; that any device which performs the function, whether it be called a "stop," or by any other name, is a mechanical equivalent of the stop, E, and consequently within the scope of the claim; and that the claim should be construed to read as follows: "An endless traveling belt, a device extending across it to change the direction of the cans, an arm swinging over the belt," etc. In the appellants' ma-

chine the device which removes the cans from the carrying belt, and places them upon the plunger, is a wheel fixed upon a central axis, rotating in a circle above the carrying belt. Its periphery is cut away so as to form four concave spaces, which, as the wheel rotates, catch the cans upon the carrying belt, and carry them in a direction at right angles thereto, and place them on the plungers. It operates to change the direction of the moving can, and to remove it from the belt, but in the operation there is no perceptible pause in the movement of the can. In the appellee's machine the cans are removed from the belt by the swinging arms, which take the cans after they have been intercepted in their forward movement on the traveling belt by the stop, E, and have been brought to a rest, and deflects them to the plunger. The trial court held that the stop bar, E, is an element of claim 1 which is entirely dispensed with in the appellants' machine, and that thereby infringement of that claim is avoided. Upon a careful consideration of the claim and of the evidence, we are not convinced that this was error. While the wheel which the appellant uses performs the function of the appellee's swinging arms, we think it cannot be construed to perform in addition to that function the office performed by a stop, E, extending across the belt, which in the appellee's patent is described as a rigidly fixed bar, without giving to the combination a more liberal construction than, in our judgment, it is entitled to, in view of the fact that none of the devices used in the combination was original with Jensen.

Claim 3 covers the combination of a transverse belt with the feeder having projecting arms, between which the cans are received from the belt, and the actuating devices by which the motions of the feeder are produced substantially as in the patent described. The feeder in the appellee's patent, designated F, is a straight back, with four arms projecting at right angles forming three pockets. It is attached to three cranks, which rotate, giving it an eccentric, sweeping motion. The cans, having been carried by the traveling belt to the stop, E, remain stationary; the belt continuing its motion beneath them. The feeder, in this sweeping movement, catches the can in the first pocket, between the first pair of arms, and pushes it at right angles to the line of the belt travel, moves it a short distance, and then recedes, leaving the can stationary until the next sweep, when it is received in the middle pocket, and moved upon the plunger, S, which is rigidly fixed in the center of the machine, but which moves vertically so as to push the can upward into its cap, and, to descend after the can is headed. By the next movement of the feeder, the can is received into the third pocket thereof, and moved off the plunger. In the appellants' machine, when the can is carried by the wheel, 36, and is brought into position on the plunger, its function is completed. It does not afterwards attach the can. Now, it is true that in its operation the feeder, F, in the appellee's machine, performs a function not accomplished by the wheel, 36, of the appellant's machine. It does all that is done by the wheel, and more. But what is the scope of the appellee's claim? It covers the transverse belt, the feeder having projecting arms, between which the cans are received from the belt, and the actuating device. No claim is made for the further function of removing the can from the plunger

after it is headed. The question is, do the appellants use a feeder with projecting arms, between which the cans are received from the belt? It is apparent at a glance that the peripheric wheel could be constructed as well with projecting arms as with the curved pockets, and that its operation would not be altered. If the appellee is entitled to be protected in the claim as it is made in his patent—and it is not disputed that he is entitled to such protection—we think infringement cannot be avoided by merely changing the shape of the arms of the feeder. Nor do we think that the fact that the wheel, 36, of the appellants' machine, moves in a true circle, while the feeder of the appellee's moves eccentrically and intermittently, sufficient to constitute a fundamental difference. We are of the opinion, therefore, that claim 3 is infringed by the appellants.

Concerning claim 5, we entertain no doubt of the correctness of the ruling of the trial court that the appellants have infringed. The claim covers the inclined chute into which the caps are placed, a stop extending across the chute to check their movement, in combination with a trigger extending across the path of the cans, and connected with the stop, so that, as the trigger is moved backward by the passage of the can, it withdraws the stop and allows a cap to move down the chute. The essence of this claim is the fact that each can automatically releases its own cap for the capping operation, and it is an important feature of Jensen's invention. Prior to his invention, caps for each can had been supplied by hand. The appellants' device contains a trigger in the path of the cans, a stop in the path of the caps, and a connecting mechanism between the trigger and the stop whereby each can releases its cap. It dispenses with the inclined chute, but in its place substitutes an endless traveling belt, which is the mechanical equivalent of the chute for carrying the caps. This substitution is not sufficient to avoid infringement. A stationary chute, in which the caps move by gravity, and a moving belt carrying the caps, are interchangeable and equivalent; both being old and well-known devices. Counsel for the appellants contend that, in disposing of the question whether the traveling belt is the equivalent of the chute, the inquiry is whether a belt could be substituted for the chute in the appellee's machine. But the test is not whether in the machines, as they are made, a belt could be imported from the appellants' machine so as to work harmoniously without adaptation or change. The true inquiry is whether or not a belt could be adapted to the appellee's machine. Of this the evidence leaves no doubt. In fact, it is so apparent as to require no proof.

The elements of the ninth claim are the vertically moving plunger, upon which the cans are delivered by the feeder; the conical guide above the cans; the transversely moving slides, upon which the caps are received; and mechanism for withdrawing the slides as the can enters the cap. The appellants contend that they dispense with the vertically moving plunger. Their machine has a device, marked 19 in their patent, called a "cap seat." It is a disk resting on a vertical stem, 18, which passes through a vertical hole in the revolving bracket, 14a. It is not denied that this is a plunger, but it is contended that it is not a vertically moving plunger, for the reason that the bracket, 14a, rotates around the central shaft, and in that rotation the dependent

vertical stem of the plunger passes over the inclined face, 46, of the stationary cam, 47, giving to the plunger a resulting circular motion, as well as an upward movement on an inclined plane. It is true that the plunger, while it rises in a vertical line as to its bearings, moves at the same time on an inclined plane by reason of riding over the cam; but at no time does the plunger, or the can which it carries, depart from a perpendicular position. There can be no doubt that it is a vertically moving plunger as to the can cap which is placed above it, or that by that vertical motion it carries the can into the can-capping mechanism, or that by that vertical movement it performs all the functions which are performed by the appellee's can-capping mechanism. Infringement is not avoided by the fact that at the same time a revolutionary movement is imparted to the mechanism, which carries both the cap and the can during the operation. Ives v. Hamilton, 92 U. S. 426, 23 L. Ed. 494; Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Brush v. Condit, 132 U. S. 39, 10 Sup. Ct. 1, 33 L. Ed. 251; Hoyt v. Horne, 145 U. S. 302, 12 Sup. Ct. 922, 36 L. Ed. 713.

Claim 10 adds to claim 9 the second plunger, moving vertically above the can cap, and following it down by gravitation or otherwise so as to steady the can in its descent after the cap has been applied. The appellants use an upper plunger, which they call a "cap presser." They contend, however, that they avoid infringement by reason of the fact that their upper plunger is not required to steady the can—other means being used for that purpose—and that the upper plunger or cap presser is used only for the purpose of pressing the cap on its seat, and holding the same in place while the can body is forced into it. But the evidence indicates that the cap presser of the appellants' machine not only acts as a resisting plate during the can-heading operation, but that it afterwards follows the can and steadies it; the difference being that it does not follow it as far as does the upper plunger in the appellee's mechanism. But it is immaterial whether or not the upper plunger or cap presser of the appellants' machine performs all the functions of the upper plunger of the appellee's. Claim 10 of the latter covers the device itself in the combination, and not the function thereof. It is unimportant that the appellants do not accomplish by their plunger all that is accomplished by the appellee's. The two devices are the same, and the appellants cannot avoid infringement by failing to make use of the upper plunger for all purposes for which it might be used.

The elements of the eleventh claim are the vertically moving plunger on which the can is received, a carrier for placing the can thereon, a mechanism by which the plunger is reciprocated vertically, a second plunger resting upon the can cap, and mechanism for raising this second plunger before the arrival of the next cap. The trial court held that this claim was not infringed, for the reason that among the devices of the combination was included the second feeder, F, which is not reproduced in the appellants' machine. The appellants contend that claim 11 is not infringed for the further reasons that their machine does not use the vertically moving plunger, S, or the upper plunger, U. But from the views above expressed, in which we found that the appellee's feeder, F, is reproduced in the appellants' machine, as well as

the vertically moving plunger, S, and the overhead plunger, U, it follows that the eleventh claim of the appellee's patent is necessarily infringed by the appellants'.

The decree of the Circuit Court will be modified in accordance with the foregoing opinion.