COLMAN et al. v. BYRD MFG. CO. et al.

(District Court, E. D. North Carolina.   October 1, 1912.)

No. 325.

1. PATENTS (§ 112*)—VALIDITY—PRESUMPTION.
      The grant of a patent is prima facie evidence that the patentee is the
   first inventor of the device described therein and of its novelty.
      [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165;  Dec.
   Dig. § 112.*]

2. PATENTS (§ 72*)—ANTICIPATION—COMBINATION.
      A patent for a combination is not anticipated because all of the ele-
   ments may have been in previous use, unless in substantially the same
   combination.
      [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 86–91;  Dec.
   Dig. § 72.*]

3. PATENTS (§ 328*)—VALIDITY AND INVENTION—KNOTTING MACHINE.
      The Colman patents, No. 672,636 and No. 755,110, for a knotting ma-
   chine designed for tying knots in thread as it is run off the bobbin onto
   the spool in cotton mills, were not anticipated, and disclose an invention
   of a primary character and great utility;  also held infringed.

In Equity.   Suit by Howard D. Colman, Luther L. Miller, and
Harry A. Severson, partners trading as the Barber-Colman Com-
pany, against the Byrd Manufacturing Company, the Harris Ma-
chinery Company, Britton E. Byrd, and John H. Harris.   On final
hearing.   Decree for complainants.

Luther L. Miller and Lincoln B. Smith, both of Chicago, Ill.,
Aycock & Winston, of Raleigh, N. C., and Melville Church, of
Washington, D. C., for plaintiffs.

Guthrie & Guthrie and James S. Manning, all of Durham, N.
C., and Chas. E. Brock, of Washington, D. C., for defendants.

CONNOR, District Judge.   This is a suit in equity, wherein
complainants allege:  That Howard D. Colman, a citizen and resi-
dent of the state of Illinois, being the true, original, first, and sole
inventor of certain new and useful improvements in knotting im-
plements, not known or used by others, applied for and, in accord-
ance with the provisions of the statutes in regard thereto and the
rules of the Patent Office of the United States, obtained on the
23d day of April, 1901, letters patent of the United States, No.
672,636 for the said invention for the term of 17 years.   That on
February 28, 1902, the said Howard D. Colman obtained from said
Patent Office letters patent No. 755,110 for certain improvements
in said original invention, all of which is shown by exhibits at-
tached to the bill herein.   That said patents were, prior to filing
this bill, duly assigned to the complainants, residents and citizens
of the state of Illinois.   That the several patents and claims grant-
ed in and by said letters patent Nos. 672,636 and 755,110 pertain to
the same subject-matter and are adapted to be used conjointly, etc.

Complainants allege:  That the said knotting machine, covered

---

by said patents, is of great importance in the textile industry, for the purpose of tying knots as the thread is run off the bobbin onto the spool. That for many years, in the textile industry, the demand for such a machine or implement has been recognized, and that many efforts have been made to supply such want, all of which have been unsuccessful, until the invention of the "Barber knotter," by which name the said invention is known. That said invention is looked upon with great favor, both by the owners and managers of mills and by the operatives who use such implements. That the use of said implements not only materially increases the capacity of the spooling department of the cotton mills, but improves the quality of the knots tied, by forming said knots smaller and firmer, and with the ends more uniformly short than those tied by hand. That by reason of this improved quality in the knots, and owing to the further fact that the implement ties the knot without untwisting the thread, and thereby weakening it, as hand tying does, the machine-tied knots pass through the loom with less breakage and fewer interruptions than the hand-tied knots, whereby the capacity of each loom is considerably increased and the quality of the fabric is much improved. That the said Barber knotter is used most largely in mills for the manufacture of cotton cloth. That upwards of 20,000 of said knotters have been sold by complainants for use in the United States. That no other knotter, except that manufactured by defendants, is in use, so far as complainants are advised, in this country. That the said invention of said Howard D. Colman was a pioneer invention, and said letters patent are basic patents and of great value, and that the public generally have recognized and acquiesced in the rights of complainants as secured to them by said letters patent. That the several improvements patented and claimed in and by the said letters patent 672,636 and 755,110, and by the several claims thereof, pertain to the same subject-matter, and are adapted to be used conjointly, and are capable of being embodied and used together in a single knot-tying implement, and are so embodied and used by complainants and by defendants. That, subsequent to the issue of said letters patent, each and every knot-tying implement embodying the said inventions of the said Colman patent, as aforesaid, was and has been marked with the words and figures following, to wit: "Pat. Apr. 23, 1901," and "March 22, 1904." That said mark is impressed in the metal of a part of each implement in a conspicuous place thereon and is clearly legible. That complainants, by reason of the several assignments of said patents, recited in the bill, are now the sole and exclusive owners of said letters patent, and the inventions and improvements described therein, and of all the rights and privileges granted and secured thereby, and have invested and expended large sums of money and have exerted great labor in and about said inventions, for the purpose of reducing said inventions to their simplest form, in making the said knot-tying implement, embodying said inventions, mechanically accurate and durable, in making the several parts thereof in-

terchangeable, etc., in erecting buildings with a power plant and machinery for the manufacture of said implement, in making dies, forms, and special machinery used in the manufacture of said implement, and in advertising same, etc. That on or about October 9, 1907, written notice of the rights of complainants' corporate predecessor, under said letters patent, was given to defendant Britton E. Byrd, and on the 16th day of October, 1907, the attorney for complainants went to Durham, N. C., and then and there orally gave to said Byrd further and more specific notice as to the infringement of complainants' said letters patent 672,636, by the manufacture of the knot-tying implement then made and proposed to be manufactured by said Byrd. That said defendant Britton E. Byrd organized the corporation Byrd Manufacturing Company, one of defendants herein, for the manufacture and sale of said knot-tying implement. That said Britton E. Byrd is general manager and is in active control of the business and affairs of said Byrd Manufacturing Company. That on January 4, 1908, complainants' corporate predecessor filed in the United States Circuit Court for the Eastern District of North Carolina a bill in equity against said Britton E. Byrd for the infringement of letters patent No. 672,636. That thereupon said manufacturing company ceased the manufacture of the said infringement knot-tying implement, and, until quite recently, has remained quiescent as to said infringement. That by reason thereof complainants' corporate predecessor dismissed its bill without prejudice. That during the present year, to wit, 1910, said Britton E. Byrd conspired with defendant John H. Harris, to the prejudice of complainants, to infringe their said letters patent Nos. 672,636 and 755,110, and pursuant thereto organized the defendant corporation Harris Machinery Company, during the month of March, 1910, pursuant to the laws of North Carolina. That said Britton E. Byrd, acting for said Byrd Manufacturing Company, and John H. Harris, acting for said Harris Machinery Company, have entered into an agreement or arrangement for the joint infringement of complainants' said letters patent, and pursuant thereto have jointly manufactured and sold said knot-tying implement in infringement of said letters patent.

Complainants further allege that defendants were continuing the manufacture and sale of "certain knot-tying implements, exhibits whereof are attached to the bill, to their great damage and injury. They pray for discovery and other appropriate relief," etc.

Defendants, answering the bill, deny that Colman was the true, original, and sole inventor of the knot-tying implement set forth and described in the said patents, and that the said knot-tying implement was not known or used by others in this country before the said alleged invention was patented. They admit that the patents issued as alleged, but allege that the provisions of the law were not complied with, and deny that any lawful grant, right, or privileges accrued by reason of said letters patent. The defendants deny the other material averments of the bill. They admit that they have regularly established places of business in the East-

ern district of North Carolina, etc., but deny that they have committed any acts of infringement, etc. They deny that they have, at any time, made use of or sold any knot-tying devices containing and embodying the alleged inventions described and contained in said letters patent, or that they have infringed on the alleged rights of complainants, or have threatened to do so. Defendants allege that all of the knot-tying devices made or sold by them, or either of them, of the character complained of in the bill of complaint, were constructed in accordance with letters patent numbered 870,527, 934,388, 934,389, and 937,693, granted to Britton E. Byrd, November 5, 1907, September 14, 1909, and October 19, 1909, respectively, and are not in contravention of any rights of the complainants. Defendants further aver that the letters patent 672,636 and 755,110 are invalid and of no effect in law, because of the alleged inventions and improvements described and claimed therein, and every material and substantial part thereof was patented prior to the supposed invention or discovery thereof by said Howard D. Colman (the answer sets out a list of patents, giving numbers, date of issue, and persons to whom issued), and in various other letters patent, the numbers and dates whereof defendants have not yet ascertained and cannot specify, etc. Defendants further allege that the said letters patent Nos. 672,636 and 755,110 are void and of no effect and force, for the reason that the claims forming a part of the said letters patent do not recite, cover, or embrace patentable combinations, within the meaning of the law, but are, and each is, an aggregation of parts, not constituting a patentable combination, and not co-operating in the production of any unitary result, and that the said letters patent are void, for that they do not describe and claim any new and original device or combination of parts involving invention within the meaning of the statute, but describe and claim simply unsubstantial changes and obvious modifications of old and well-known devices for that purpose, such changes and modifications involving nothing more than mere mechanical skill, not constituting patentable subject-matter.

Answering certain interrogatories submitted by complainants, defendants say:

(1) That the Byrd Manufacturing Company manufactured the knot-tying implement attached to the bill as "Exhibit C," and stamped "Byrd Mfg. Co., Durham, N. C. No. 422."

(2) That said implement was delivered by said manufacturing company to the Harris Machinery Company to be sold.

(3) That the Harris Machinery Company is an agent in and for certain Southern states named, for the sale of the Byrd knotter.

(4) That the Byrd Manufacturing Company attached the label "Exhibit D" to a box containing the Byrd knotter. (For form of label, see Complainants' Record, page 10.)

(5) That the Harris Machinery Company sold the Byrd knotter.

(6) That Britton E. Byrd organized the Byrd Manufacturing Company for the manufacture and sale of a knot-tying implement.

(7) That said Byrd Manufacturing Company, prior to January 8,

1908, manufactured and sold in the Eastern district of North Carolina a knot-tying device generally similar to that represented by "Exhibit C."

(8) That said company did not cease to manufacture said knot-tying device after the Barber-Colman Company filed its bill in equity in this court.

(9) That it was not the purpose, or one of the purposes, of the Harris Machinery Company to join with the Byrd Manufacturing Company in the manufacture, or sale, or the manufacture and sale of the Byrd knotter, as represented by "Exhibit C," or a knot-tying device generally similar to that device, nor was it the purpose of said company to divide liability for the infringements of said patent or any other patents. That the Byrd Manufacturing Company is not pecuniarily interested in the business or in the profits resulting in the business of manufacturing the Byrd knotter, nor is the Byrd Manufacturing Company pecuniarily interested in the sales made by the Harris Machinery Company of the Byrd knotter.

They deny that the two corporations were, at any time within six years, jointly interested in the manufacture and sale of the Byrd knotter, or that there is in existence any agreement between the said corporations to that effect, or to join in the defense of any suits brought for infringement, etc.

Certain stipulations were made, and are set out in complainants' record, relating to and waiving the formal proof of certain documents, etc. (Complainants' Record, 22, 23.) Before beginning the examination of complainants' expert, Arthur S. Browne, Mr. Miller, for complainants, stated that:

"For the purpose of shortening the record and relieving the court from considering so many claims (the whole number set out in the letters patent being in excess of 100), the charge of infringement in the present suit would be confined to claims 17, 40, 48, 66, and 78 of the first Colman patent, No. 672,636, April 23, 1901, and to claims 2, 9, and 18 of the second Colman patent, No. 755,110, March 22, 1904." (Complainants' Record, p. 25.)

The testimony taken before the special examiner was, in this respect, confined to these claims.

The questions raised upon the bill, answer, replication, and the answer to the interrogatories, and argued by counsel, are:

(1) Whether the patents, under which complainants rely, are valid. Was the device or implement, known and described in the bill as the "Barber-Colman knotter," a new, original invention, or a mere combination of elements already known and in common use? Had it been anticipated?

(2) Does the Byrd knotter, manufactured and sold by defendants, infringe the complainants' patents, if found to be valid?

Exhibits of both implements, together with other devices, were, on the question of anticipation, introduced and used in the argument.

[1] The Barber knotter having passed through the examination of the Patent Office, and letters patent having issued, the presumption obtains that the implement, device, or combination was patentable, and

the burden of proof rests upon the defendant to show that such letters patent are invalid. This principle seems to be well settled.

"When want of novelty is set up as a defense to a suit for infringement of a patent, the burden of proof is upon the defendant, and he must establish the defense beyond a reasonable doubt. The grant of letters patent is prima facie evidence that the patentee is the first inventor of the device described in the letters patent and of its novelty." Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017; San Francisco Cornice Co. v. Beyrle (C. C.) 195 Fed. 516.

While it may be that a portion, perhaps several, of the elements which are found in the Barber knotter are found in other and former implements, or inventions, the evidence shows that no one in the field of invention of an implement for tying knots for the peculiar purpose and use for which this knotter is valuable had, prior to Colman's invention, either invented, or by combination produced, an implement which insured the desired result. No one had anticipated and applied to practical use the mental conception found in Colman's implement, and this is held to be the test of patentability.

[2] In Lowrie v. Meldrum Co. (C. C.) 124 Fed. 761, it is said:

"An arrangement of parts in combination, so as to produce a new and useful result, shows invention, although such parts separately were well known and in common use, when such combination for the purpose intended was not obvious to persons of ordinary mechanical skill."

Judge Wheeler, in Weston El. Instrument Co. v. Jewell (C. C.) 128 Fed. 939, says of a defense of anticipation:

"His [complainant's] invention would not be anticipated by the use of any or all of these principles in some other mode or modes, but only by using them in his mode. Neither will the use of each and every part of any or all of his devices in some one or more descriptions or structures before amount to such anticipation as to defeat the patent, unless substantially his arrangement is found in some one of them, operating in the same way to produce substantially the same results." Eck v. Kutz (C. C.) 132 Fed. 758; Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586.

In Letson v. Alaska Packers' Ass'n, 130 Fed. 129, 64 C. C. A. 463 (C. C. A. 9th Circuit), Gilbert, Circuit Judge, discussing the question of patentability, says of the invention in controversy:

"He brought to success what prior inventors had essayed, and but very imperfectly accomplished. In so doing he adapted some devices that had been used before, combined them with others that had not been used, and added the necessary elements to make a practical and successful machine. His combination and invention was, we think, more than a mere improvement or perfection of what preceded it. It was of such novelty and importance as to constitute a distinct step in the progress of the art, and it went into immediate and extensive use." Graff, Washbourne & Dunn v. Webster (C. C. A.) 195 Fed. 522.

[3] An examination of the various implements, either used as exhibits or referred to in the briefs, fails to show that any of them, upon the principle laid down by the courts in numerous cases, anticipated the invention of Colman. The testimony of Mr. Draper, who was not only, so far as the record shows, a disinterested, but a very intelligent and well-informed, witness, is important. He says that the Draper Company, for many years, including its predecessors, have

been engaged in the introduction of improvements in cotton machinery. He gives a history of a number of devices or inventions made for tying knots in the spooling process in the textile industry, he thinks as many as 20, all of which proved unsatisfactory. He says that he first saw the Barber-Colman knotter some six or seven years ago. It was placed on the Draper Company catalogue, with the statement that the company had been endeavoring to introduce various knotting devices, which had been found more or less efficient, but had withdrawn from the field for the present, because an outside firm was introducing a more satisfactory device; that they were so glad to recognize any improvement that assists the operation of weaving that they viewed their own immediate defeat undisturbed. The witness gives, in detail, his reasons for thinking the Barber knotter superior to all others; that the difference in mounting or supporting the Barber knotter is in practice fundamental; that it went into use more rapidly than any other improvement in cotton machinery, of which he had any recollection. "Its reception by the trade was surprisingly unanimous." The Barber knotter was recognized by magazines and other publications as a new invention, producing new results of value in the textile industry. Many thousands were sold to cotton mills, covering 95 per cent. of the Northern and 85 per cent. of the Southern mills. This is recognized by the Supreme Court in Hobbs v. Beach, 180 U. S. 393, 21 Sup. Ct. 409, 45 L. Ed. 586, as a proper matter for consideration. It is said in Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275:

"Where the question of novelty is in doubt, the fact that the device has gone into general use and displaced other devices employed for a similar purpose is sufficient to turn the scale in favor of invention."

"When the question of novelty is fairly open for consideration under the law, the fact that a patented device or combination has displaced others which had previously been used to perform its function and has gone into general use is pregnant evidence that it involves invention." Kinloch Tel. Co. v. Western Electric Co., 113 Fed. 659, 51 C. C. A. 369.

I think, in view of the entire evidence, the defendants have failed to overcome the presumption to which complainants are entitled by the issue of the patents, and to establish their contention that complainants' patents are invalid. The inventor of the Barber-Colman knotter, in the language of the courts, has by a new combination and arrangement of known elements produced a new and beneficial result never attained before. Webster Looming Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.

Upon the question of infringement in respect to the claims specified and relied upon by complainants, the evidence of the experts on each side is very full; each giving reasons sustaining his opinion. A careful examination of the evidence and the two devices or implements brings my mind to the conclusion that defendants' knotter, in several respects, infringes the complainants' patent. It is not practicable to enter into a discussion of the testimony. To a very large extent, it consists in the opinion of the experts, the value of which is largely dependent upon the reasons given as the basis of such opinions and an examination of the implements in evidence.

A decree may be drawn enjoining the corporate defendants, and each of them, together with the officers, managers, and agents, from further infringing patent No. 672,636 and patent No. 755,110, in respect to the claims in controversy. The decree may also direct a reference to a special master to take and state an account of the damages sustained by complainants by reason of such infringement. The question of personal liability of the individual defendants will be reserved until the coming in of the report. The costs will abide the final decree.