HAYS v. HEIDELBAUGH. See Case No. 3,-318.

HAYS (HUNTER v.). See Case No. 6,906.

HAYS (JONES v.). See Case No. 7,467.

HAYS (RIDGWAY v.). See Case No. 11,817.

## Case No. 6,271.

### HAYS et al. v. SULSOR et al.

[1 Fish. Pat. Cas. 532;[1] 1 Bond, 279.]

Circuit Court, S. D. Ohio. Nov., 1859.

INFRINGEMENT OF PATENT—UTILITY—ESTOPPEL—PRIOR USE—ADDITION TO INVENTION.

1. It is a principle well settled and often recognized that, if the jury find that the defendant has used the invention itself or something substantially like it, he is estopped from denying its utility, for use implies utility.

[Cited in Johnson v. McCabe, 37 Ind. 538.]

2. To defeat a patent by showing a prior use of the invention, the statute has expressly provided that notice must be given of the place where and the parties by whom the thing relied on as a defense had been used. This provision is designed to give the patentee the benefit of an examination into the facts of the supposed prior use.

3. A reference to a county in which, it is alleged, the prior use took place, is not sufficiently definite and explicit, as to place, to fill the requirements of the spirit of the act.

[Cited in Smith v. Frazer, Case No. 13,048.]

4. A prior use in a foreign land, does not invalidate a patent afterward taken out in this country, where the patentee, at the time of his application, supposed himself to be the first inventor, unless the prior invention has been patented or described in some printed public work.

[Cited in Illingsworth v. Spaulding, 9 Fed. 612.]

5. The description, in the prior printed publication, should be, in some degree, in the nature of a specification, so far as to enable a mechanic skilled in the art, to construct the machine. It

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

should not be vague references to, or suggestions of, the thing described.

6. A mere addition to a patented invention will not justify the use of the invention first patented.

This was an action on the case tried before Judge Leavitt and a jury. The plaintiffs [Coleman and Willis Hays] were assignees, for Paint township, Fayette county, Ohio, of letters patent [No. 14,287], granted to Abraham, Ezra, and Charles Marquiss and Charles Emerson, February 19, 1856, and brought suit to recover damages from the defendants [Frederick Sulsor, William Tway, and others], who were using upon their farms, in Paint township, a mole plow, purchased of Moses Bales, and manufactured under letters patent granted to him February 15, 1859. The patented implement consisted of a piece of cast-iron about eighteen inches in length, sloping from a point upward and outward, until at the rear it was some six inches in height and width. The top projected in rear of the sides a few inches forming what was called a "tail," and shaped somewhat like a beaver's tail. The bottom was hollowed out, so that a cross-section of the mole would be nearly in the shape of a horse-shoe. This mole was attached to a long and sharp coulter, and was dragged along about three feet below the surface of the earth by powerful mechanism applied to the coulter. In its progress, it formed an arched tube or chamber, six inches in diameter not unlike the burrow of a mole. The claims of the patent were as follows: "What we do claim as our invention and desire to secure by letters patent is the peculiar shape of the mole, which enables its forward movement to form a subterranean perforation, whose top and whose sides will be smoothly and densely compressed, and whose bottom will be left almost entirely uncompressed. We also claim, the tail of the mole of such a shape and position that it will serve to close up the slit cut by the mole shank in forming a perforation, and also serve to lead the mole upward to the surface of the ground, as soon as the beam is allowed to turn on its axis."

G. M. Lee and S. S. Fisher, for plaintiffs.

R. M. Corwine and Charles Fox, for defendants.

LEAVITT, District Judge (charging jury). This action is brought against four defendants for the infringement of a patent granted to Abraham, Ezra, and Charles Marquiss and Charles Emerson, February 19, 1856, for an "improvement in the mode of draining plows." The title of the patentees has passed to the defendants by various assignments, which are in evidence, and which place their title beyond dispute. There is no controversy in the present case as to the sufficiency of the specifications. The testimony of Mr. Knight upon this point is that they are remarkably clear and exact. Not to occupy time with reading them, as they

have been commented upon at length, I will call your attention to the claim or summing up, which is in these words:

"What we do claim as our invention and desire to secure by letters patent is the peculiar shape of the mole, which enables its forward movement to form a subterranean perforation, whose top and whose sides will be smoothly and densely compressed, and whose bottom will be left almost entirely uncompressed.

"We also claim the tail of the mole of such a shape and position that it will serve to close up the slit cut by the mole shank in forming a perforation, and also serve to lead the mole upward to the surface of the ground as soon as the beam is allowed to turn on its axis."

The patentees admit the invention and use of the drain plow previous to their own discovery, and claim the improvements specified. There are two of these improvements, for the infringement of either of which an action may be maintained.

To the claim of the plaintiffs the defendants interpose several defenses: First, that the alleged invention is of no utility; second, that it was previously described in printed publications, and third, that the defendants do not use the thing patented.

First, as to utility. There is no question but an invention must be of some utility; a patent can not be granted for a thing altogether frivolous; but the presumption on the face of patent is that it is of some utility, for the applicant is obliged to swear that the invention is useful before the emanation of the patent.

The improvements claimed are: First, making the underside of a mole plow hollow, so that there shall be no pressure on the bottom, and second, the elongation of the hinder end, by which the cut made by the coulter is closed up. It is not claimed, as I understand it, that this cut will be closed all the way up to the surface, but only at the top of the drain itself. The plaintiffs' witnesses say that this plow makes a drain of proper size, having the top and sides compressed and leaving the bottom uncompressed. It is also claimed that perfect draining is accomplished at much less cost by the use of this instrument than by the means of draining before known, and in considering the question of utility, any saving in labor or expense is a proper subject for the consideration of the jury.

On the other side, it is said that the operation of this mole would be as complete if the hollow were filled, and also that the appendage does not close the slit. The jury are at liberty to use their own knowledge and to come to their own conclusion as to the validity of these objections. Upon this point, however, I am requested to charge, and I add, that it is a principle well settled and often recognized, that if the jury are satisfied that the defendants have used the invention itself or something substantially like it, they are estopped from denying its utility, for use implies utility, and it would be fair to presume that the party would not use it if he thought it of no utility.

Second, as to the novelty. The defense that an invention is wanting in novelty or originality goes to the validity of the patent. But here, as in the case of utility, there is a presumption arising from the patent itself, in favor of the novelty of the invention which it covers. This presumption the defendants may overcome by showing that the thing had been previously known. To do this, the statute has expressly provided that notice must be given of the place where, and the parties by whom the thing relied on as a defense had been used. This provision is designed to give the patentee the benefit of an examination into the facts of the supposed prior use. It has been ruled by the court that the notice given for this purpose in this case was defective in referring merely to the county in which the thing was in use. This reference, the court held, was not sufficiently definite and explicit as to the place, to fill the requirements of the spirit of the act. It may, therefore, be said that there is no evidence that will affect the novelty or originality of this improvement, which is derived from any use of the Clark county mole. Though, if such use had been proved, I hardly think it could stand in competition with the plaintiffs' machine. It is obviously of a very different shape, and one of the witnesses has said that it contains no element of the patented mole. Its prior use, or the knowledge of that use could, therefore, hardly have been used in contravention of this invention.

But it is claimed that this invention was known in a foreign country. Such a use in a foreign land does not invalidate a patent afterward taken out in this country, where the patentee, at the time of his application, supposed himself to be the first inventor, unless the prior invention has been patented or described in some printed public work.

Two such public works are produced by these defendants, in which they say that this invention was described as long ago as 1851 and 1852. These books are "Morton's Encyclopedia of Agriculture," and "Stephens' Book of the Farm." The inquiry for the jury upon this point is, whether these books describe substantially the improvement described by the patentees. If so, then this defense goes to the validity of the patent. The description should also be to some degree in the nature of a specification, so far as to enable a mechanic skilled in the art to construct the machine; it should not be vague references to, or suggestions of, the thing described. The evidence of the experts in this case is that a skillful mechanic might construct the plow described by Stephens, but not that referred to by Morton. Whatever be the accuracy of the description, the jury

must be satisfied that the thing described is substantially the thing which would be made from the patent, for, if when made it is a different thing, it is not available to attack the novelty of the patented invention. It seems that these books do not provide for a cavity in the bottom of the mole, nor for any elongation, nor do they leave the bottom uncompressed, but provide for the water coming in from the top; the drain is also shallow and of less size—indeed Mr. Knight testifies that the thing described does not contain a single element of the patented article.

Third, as to infringement. If the jury find the patent in full force they will inquire whether the defendants have infringed. They have done so if they used either one of the patented improvements, or if they have made use of devices substantially the same, in which the same principles are brought into requisition, or, in other words, which are alike in their principle of operation. The patent is dated February, 1856. The patent of Moses Bales, under which defendants claim, is dated February, 1859. Is the plow made under the Bales patent substantially the same thing as that manufactured under the Marquiss patent? If so, it is an infringement. A mere addition to a patented invention will not justify the use of the invention first patented. Upon the question of infringement we are frequently obliged to depend in great measure upon the testimony of experts. Two of these have been examined in this case—Mr. Knight and Mr. Clifton. Both have stated that there is no substantial difference between the two moles, and they are not contradicted by any witness. If the jury are satisfied that they are substantially the same, they will have no difficulty in coming to a conclusion on this point.

The only remaining question is that of damages. When ascertainable, the defendants' profits are the proper rule of damages. In this case, it is also claimed that the license price and expenses of litigation should be considered. The law gives to the plaintiff his actual damages, and the amount of these is left to the discretion of the jury, under the circumstances of the case, looking to the compensation of the plaintiff.

The jury found a verdict for the plaintiffs, with $200 damages.