CONVERSE (BRADLEY v.). See Cases Nos. 1,775 and 1.776.

CONVERSE (BURGESS v.). See Case No. 2,154.

## Case No. 3,144.

CONVERSE et al. v. CANNON et al.

[2 Woods, 7;[1] 9 O. G. 105.]

Circuit Court, D. Louisiana. Nov. Term, 1873.

PATENTS—COMBINATION—INFRINGEMENT—DEFENSES.

1. It is no defense to an action for an infringement of a patent for a combination of several well known devices, for defendant to allege that he has improved upon one of the independent devices used in the combination.

2. Where a patent covers a combination of devices for handling steamboat staging, consisting of a rope attached to a derrick, and the application of force by means of a power windlass, the use of the combination without authority will be an infringement, notwithstanding variations in the method of attaching the rope, or in the form of the derrick, or in the position in which the stage is placed on the deck of the boat.

[Bill by E. K. Converse and others against John W. Cannon and others to restrain infringement of a patent.]

This was a cause in equity, heard for final decree upon the pleadings and evidence.

J. R. Beckwith, for complainants.

R. H. Marr, for defendants.

WOODS, Circuit Judge. The complainants allege that they are the assignees of a patent [No. 31,147] issued to one A. John Bell, dated January 22, 1861, for an "improvement in steamboat staging;" that they are also the assignees of two patents issued to one Hannibal S. Blood, the first [No. 103,834] dated June 7, 1870, being for "a new and useful improvement in derrick or hoisting cranes, and relating particularly to a means for avoiding the labor and delay incident to handling and manipulating heavy landing stages used on steamboats and water craft by manual labor," and the second [No. 124,878] being a patent dated March 26, 1872, for an "improvement in derricks;" that all of the inventions named in said three letters patent relate to the manner and mode of manipulating and handling stages used on steamboats and water craft, for landing freight and passengers, whereby manual labor is in a great measure dispensed with, and great economy in the navigation of such vessels effected; that the defendants John W. Cannon and William Campbell, the first largely interested in the steamer Robert E. Lee, as owner, and the latter being her master, are using upon said boat two several machines which are substantially in their mode of construction the same as the machine described in said three letters patent. The bill prays for a perpetual injunction against the defendants, to restrain them from infringing upon the patents owned by the complainants, by the use of said machine now employed by them upon the steamer Robert E. Lee.

The answer of defendants denies any infringement of the patents held by complainants, and claims that they use an apparatus invented by one John Perkins, and patented to him by letters dated May 7, 1872, which differs substantially and materially from the apparatus covered by the patents owned by complainants, and is not an infringement thereon. The answer further alleges that the results attained by the contrivance patented to Blood were accomplished by cranes described upon pages 349, 350, vol. 1, of Appleton's Dictionary of Mechanics, published in 1865, one of which it is therein stated had been used at the United States dry dock, at Brooklyn, New York, and one in the construction of the Erie canal, by which heavy weights were moved toward or from the mast, and hoisted or lowered to the required position by means of ropes and pulleys. That the results accomplished by the contrivance patented to Blood were accomplished during the late war by the marine brigade; by the application of steam power, heavy stages were raised, launched out and lowered into position on the bank, and again raised, launched inward and lowered into position in the boat, so that the results contemplated and claimed to be accomplished by the contrivance of Blood, of raising or lowering stages by applying steam power to a suitable apparatus were well known, as well as the contrivance by which such results were accomplished, and were in public use long before Blood's patent. The answer claims that the apparatus covered by the Blood patents is not useful, and its use has been abandoned.

An amended answer was filed, which, besides describing more particularly the contrivance used by the marine brigade, alleged that in December, 1868, one J. Frank Hicks used a derrick or crane provided with ropes and pulleys, and operated by steam power, for the purposes of a freight hoister on board the steamer Magenta, and for hoisting and managing the staging on said steamer.

The schedule attached to the letters patent of A. John Bell, states that the object of his invention is "a more rapid, easy and effective means of shipping and unshipping the stage planks from steam water craft, and consists in a mode of operating said planks by connection with one of the steam engines employed to work or load the vessel." His claim is thus stated: "I claim as new and of my invention and desire to secure by letters patent the arrangement of the staging C., power windlass, E. F. G. H. I., and supporting apparatus, J. K. L., the whole being constructed and operating substantially as and for the object set forth." The staging shown in the drawing is the ordinary one used on

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

steamboats upon the outer end of which is a bail, to which is attached a rope, which leads to the upper end of a gaff, the foot of which rests on the deck while the upper end is supported by a rope attached to an upright mast or spar. This gaff and mast and the rope connecting them constitute to all intents and purposes a derrick differing mainly from the derrick in common use, by the fact that the foot of the gaff or boom rests on the deck instead of resting against the mast or spar; so that we have a staging suspended by the bail at one end to a derrick. The staging so attached to the derrick is connected with a power windlass by which the stage is shoved out or drawn in, and the end of the staging as it is pushed out may be adjusted to the height of the bank upon which its outer end is to rest by the slipping of the rope attached to the bail. On the edge of the gunwale of the boat is a roller to enable the stage to move with greater facility. The two patents issued to Hannibal S. Blood, which have been assigned to the complainants and the patent to William J. Perkins under which the defendants seek to protect themselves are simply improvements upon the derrick in common use, and nothing more. The most cursory reading of Bell's patent shows that it is not intended to cover a derrick, nor a steamboat stage, nor a power windlass operated by steam, or other power. The invention claimed by Bell is for the combination of these three well known contrivances, to accomplish the handling of the stage with ease and rapidity. The roller on the gunwale of the boat is not an essential part of the combination, and is not mentioned in the patentee's claim. It is no defense to a suit for the infringement of this patent, to set up that the defendant has improved upon the derrick or upon the windlass, or upon the stage. If the combination is used, although some of its separate parts may be improved, it is an infringement. The answer of the defendants does not deny that they handle and manipulate a steamboat stage by attaching it to a derrick by a rope and raise or lower it by means of a power windlass. They set up merely that they use an improved derrick different from the derrick shown in the specification of A. John Bell's patent, and different from the derrick covered by the patents of Hannibal S. Blood.

In passing upon the issue of infringement, the question to be determined is whether under a variation of form or by the use of a thing which bears a different name, the defendant accomplished by his machine the same purpose or effect as that accomplished by the patentee, or whether there is a real change of structure or purpose. If the change introduced by the defendant constitutes a mechanical equivalent in reference to the means used by the patentee, and if besides being an equivalent, it accomplishes something useful beyond the effect or purpose accomplished by the patentee, it will still be an infringement as respects what is covered by the patent, although the further advantage may be a patentable subject as an improvement on the former invention. Foss v. Herbert [Case No. 4,957]. The material question is not whether the same elements of motion or the same component parts are used, but whether the given effect is produced, substantially, by the same mode of operation and the same combination of powers in both machines. Odiorne v. Winkley [Id. 10,432]. In determining the question of infringement, we are not to determine about similarities or differences, merely by the names of things, but are to look to the machines or their several devices or elements in the light of what they do or what office or function they perform and how they perform it, and to find that a thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result. Union Refinery v. Matthiessen [Id. 14,399]. The rule is, and so it has been settled, that if two machines be substantially the same and operate in the same manner, though they may differ in form, proportions and utility, they are the same in principle. Evans v. Eaton [Id. 4,560]. As between a device conceded to be new and a device claimed to infringe because an equivalent, the alleged infringer could not protect himself by showing that although his device was the equivalent of the patented device in all its functions, and in its construction and mode of operation, yet by other additional features it possessed other and further useful functions. Such a device, though an improvement upon the patented one, would be an appropriation of it. Woodruff, J., in Sarven v. Hall [Id. 12,369]. To constitute an infringement, the contrivances for the purposes in view must be substantially identical, and that is substantial identity which comprehends the application of the principle of the invention. Page v. Ferry [Id. 10,662]. It makes no matter what additions to or modifications of a patentee's invention a defendant may have made; if he has taken what belonged to the patentee he has infringed, although with his improvement the original machine or device may be much more useful. Howe v. Morton [Id. 6,769].

Applying these principles to the case in hand, there can be no doubt that the defendants have appropriated the invention covered by the patent of A. John Bell. That they have improved upon parts of the combination may be true; but they are using the idea first suggested by Bell, and covered by his patent, namely: the handling of a steamboat stage by means of a rope attached to a derrick, through force applied by a power windlass. The variations which have been made in the method of attaching the rope, in the form of the derrick, in the position in which the stage is placed on the deck, are immaterial variations, which do not affect the

question of infringement. As the patent to Bell bears date prior to the use of stages by the marine brigade, or the publication in Appleton's Dictionary of Mechanics, the defense of want of novelty cannot be maintained.

The averment that the device of Bell is not useful cannot be sustained. All the law requires as to utility is that the invention should not be frivolous or dangerous. It does not require any given degree of utility. If the invention is useful at all, that suffices. Cox v. Griggs [Id. 3,302]; Hoffheius v. Brandt [Id. 6,575].

The result of these views is that there must be a decree for complainants, directing a perpetual injunction to go against defendants, as prayed in the bill, and a reference to a master for an account of profits.