LOS ANGELES ART ORGAN CO. v. ÆOLIAN CO. et al.

MURRAY M. HARRIS ORGAN CO. v. SAME.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1906.)

Nos. 1,234, 1,235.

1. PATENTS—SUIT FOR INFRINGEMENT—EXTENT OF USE OF DEVICE.
   That the device of a patent was publicly used and exhibited in actual use for two years is sufficient to sustain a suit for infringement without a showing that it has been in constant use since that time.
   [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 34.]

2. SAME—VALIDITY—PRESUMPTION FROM GRANT.
   Due consideration must always be given by the court or jury, as the case may be, to the presumption of validity arising from the grant of a patent and the real question in all cases is whether or not the evidence in the case is sufficient to overcome such presumption.
   [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 162-165.]

3. SAME—CONSTRUCTION OF CLAIMS—GENERIC CLAIMS.
   A pioneer inventor is entitled to a generic claim, and may also include specific claims in the same patent, and in such case the broad claims are not, prima facie, to be restricted by reading into them the specific devices claimed in the narrower ones.
   [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 248.]

4. SAME—VALIDITY AND INFRINGEMENT—REGULATOR FOR MECHANICAL MUSICAL INSTRUMENTS.
   The Tremaine & Pain patent, No. 552,796, for improvements in mechanical musical instruments using perforated music sheets, by which two such sheets in two separate organs or a bank organ, are made to move in unison, so that the instruments will play without variation in time, is valid, and embodies an invention of such novelty and importance as to constitute a distinct step in the progress of the art, and to entitle its claims to a broad and liberal construction. As so construed it is infringed by the device of the Fleming patent, No. 659,442, which, although differing in details, embodies and appropriates the essential principles of the earlier invention.

Appeals from the Circuit Court of the United States for the Southern District of California.

Hazard & Harpham, for appellant Los Angeles Art Organ Co.

G. E. Harpham (J. J. Scrivner, on the brief), for appellant Murray M. Harris Organ Co.

Harold Binney, John H. Miller, George L. Cooper, and Dickerson, Brown, Raegener & Binney, for appellees.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. These suits were brought by appellees (complainants in the court below) against appellants (defendants in the court below) for an alleged infringement of United States letters patent, No. 552,796, granted on January 7, 1896, to William B. Tremaine and Robert W. Pain for improvements in mechanical musical instruments. The infringement charged in No. 1,235 was making and selling musical instruments constructed "in accordance with the specifications and drawings of United States letters patent, No. 659,442, granted on October 9, 1900, to William B. Fleming." It appears from the records that Fleming was formerly in the employ of the Farrand & Votey Organ Company, one of the predecessors of the Æolian Company, in Detroit, Mich., where he familiarized himself with the Tremaine & Pain construction.

Mr. Votey in his testimony said:

"Mr. Fleming knew of this as early as 1895, as I explained to him the mechanism of the Tremaine & Pain device on my return from New York about that time, and a little later Mr. Pain made me a duplicate of the device and shipped it to me in Detroit to be connected up with one of our organs in Detroit. I mean connected electrically, so that the admission of air to the tracker holes controlled a pneumatic making an electric contact which controlled the circuit for sounding the various pipes of the organ, but the mechanism for controlling the two paper sheets in unison was just like that in New York."

Thereafter Fleming commenced making various alleged improvements and inventions, which, it is claimed by appellees, embodied the Tremaine & Pain principle of operation. In September, 1900, he left the employ of the Votey Organ Company, and early in October of that year he came to California, and was employed by Murray M. Harris, and afterwards by Murray M. Harris Organ Company (appellant in suit No. 1,235). This appellant failed in business and was succeeded by the Los Angeles Art Organ Company (appellant in suit No. 1,234), and it "undertook and agreed with the Murray M. Harris Company to complete contracts still outstanding." The appeal in No. 1,234 is taken from an order of the Circuit Court granting a preliminary injunction. In No. 1,235, which will first be considered, the appeal is taken from a final decree entered by the court for an injunction, and an accounting.

It is assigned as error: (1) That the court erred in holding that the Tremaine & Pain patent sued on by complainant was good and valid; (2) that the court erred in holding that the musical instruments constructed under the Fleming patent was an infringement of claims 1, 2, 3, 4, 5, 10, 11, and 12 of the Tremaine & Pain patent. The evidence in the record, in our opinion, shows that the Tremaine & Pain patent is valid. The evidence also shows that Tremaine & Pain had constructed the apparatus, and put it in use in the hall of the Aeolian Company in New York on an organ of the Ferrand & Votey Organ Company built for the Æolian Company, as early as 1895, and it was there publicly used and exhibited in actual use for playing the organ

143 F.—56

for at least two years. This was sufficient to enable appellees to maintain this action without showing that it had been in constant use ever since. Pitts v. Wemple, 1 Biss. 87, 93, Fed. Cas. No. 11,194; Stitt, Trustee, v. Eastern R. Co. (C. C.) 22 Fed. 649; Masseth v. Johnston (C. C.) 59 Fed. 613. Does the Fleming machine and apparatus as described in his patent, No. 659,442, embody the invention as claimed in the Tremaine & Pain patent No. 552,796, and does it infringe that patent in claims 1, 2, 3, 4, 5, 10, 11, and 12? In other words, did the court err in rendering its decree in favor of the appellees? In order to determine what the rights of the appellees are, it is necessary to ascertain what their status in the art, under the Tremaine & Pain patent, is, whether they were pioneers in their invention, or mere improvers. If pioneers, they would be entitled to a broad and liberal construction, if, mere improvers, the claims would only be entitled to a narrower interpretation.

The invention as specified in the letters patent is as follows:

"This invention relates to mechanical musical instruments in which perforated sheets of paper are used in combination with a series of air ducts or passages leading to musical reeds, pipes, or other sounding devices, or to mechanism for operating the sounding devices, which are caused to sound by the exhaustion or pressure of air; all of which musical instruments are well known. Heretofore it has been very difficult if not impossible to run two perforated music sheets, each operating a separate and independent musical instrument, synchronously or together for the two musical instruments controlled by the two perforated music sheets to play together in unison; the difficulty being caused by the tendency of one of the music sheets in traveling over the air ducts for the operation of the sounding devices to get ahead or in advance of the other, by which the perforations in such advanced music sheet would cause its sounding devices to sound before those in the other music sheet. This occurs from a variety of causes well understood, and needing no particular description herein, and the object of the present invention is to combine mechanism in such manner with the travel of two or more perforated music sheets, each controlling a separate or independent organ, or bank organ, or other musical instrument, that the two or more music sheets will run or travel synchronously or together, in such manner that the music played on the several organs, or bank organs, or other musical instruments controlled by the perforated music sheets will be rendered synchronously or together in point of time, enabling, for instance, on one organ, or bank organ, or other musical instrument, the accompaniment to be played and a solo or the melody or other part to be played on another organ or bank organ, so that the musical piece being played by the several instruments would be performed together or in the same time; and the invention consists in the combination of two or more organs, or bank organs, or other musical instruments, each operated or controlled by a separate or independent perforated music sheet, and means for controlling the movements of each of said perforated music sheets, so that the two or more perforated music sheets will travel together, or in the same time, for the playing of the two or more organs or other musical instruments synchronously or together, all substantially as hereinafter fully described; and the invention also consists of the construction and arrangement of the various parts of the apparatus for carrying out this invention, all substantially as hereinafter fully described, reference being had to the accompanying sheets of drawings, in which is illustrated the present invention as arranged to operate the sounding devices of two separate and independent musical organs, or bank organs, or other musical instruments by two separate perforated music sheets—the musical instrument not being shown."

It will thus be seen that the essence of their discovery, which is the gist of their invention, was by causing special control perforation in each sheet to exercise control over the other sheet, and over its driving mechanism, thus making the sheets themselves the instrumentality for retarding either sheet running ahead until the other sheet should catch up and re-establish exact synchronism. Such was also the gist of the patent obtained by Fleming.

This discovery was important. Tremaine & Pain were not mere improvers upon a prior machine which was capable of accomplishing the same general result. They brought to success what prior inventors had been unable to accomplish. It was difficult, and had been considered impossible. They adopted some devices that had been used before, combined them with others that had not been used, and added the necessary elements to make a practical operative machine. Their invention was therefore more than a mere improvement or perfection of what had preceded it. It was of such novelty and importance as to constitute a distinct step in the progress of the art, and the claims of their patent are therefore entitled to a broad and liberal construction. Morley S. M. Co. v. Lancaster, 129 U. S. 263, 273, 9 Sup. Ct. 299, 32 L. Ed. 715, and authorities there cited; Letson v. Alaska Packers Ass'n, 130 Fed. 129, 140, 64 C. C. A. 463; Brown Bag-Filling M. Co. v. Drohen (C. C.) 140 Fed. 97.

In Hobbs v. Beach, 180 U. S. 383, 392, 399, 21 Sup. Ct. 409, 45 L. Ed. 586, the court, approving the principles announced in the Morley Case, and describing the difference existing between the patents there under consideration, said:

"In the case of a pioneer patent like this * * * there would be no difficulty in holding that these differences were immaterial, were it not for the fact that each one of the claims is limited by the words 'substantially as described.' In other words, that unless the infringing device contains mechanism substantially such as is described in the patentee's specification, and shown in his drawings, there can be no infringement. * * * While the words 'substantially as described or set forth' are not absolutely meaningless, they do not limit the patentee to the exact mechanism described in his specification, or prevent recovery against infringers who have adapted mechanical equivalents for such mechanism. In determining the range of such equivalents much depends upon the question whether the machine is a primary one, or whether the patent covers some novel feature introduced into an old machine. It is difficult to say exactly what effect should be given to these words. In one sense it may be said that no device can be adjudged an infringement that does not substantially correspond with the patent. But another construction, which would limit these words to the exact mechanism described in the patent, would be so obviously unjust that no court could be expected to adopt it."

Appellant did not introduce any evidence, nor set up any patent, printed description, actual construction, or any other matter, prior to the invention of Tremaine & Pain, by which two music sheets were mutually controlled, nor was any evidence offered by appellant to anticipate or restrict any portion of the invention made by Tremaine & Pain. Under these circumstances it seems manifest that they were pioneers. The testimony of Mr. Fleming, upon whom appellant relies, virtually admits it. In his cross-examination the following questions and answers appear:

"Q. Isn't it a fact that up to the present moment you have never heard of any double tracker and double music sheet construction provided with connections for controlling one sheet by the other sheet, prior to 1896? A. I can't say that I did. Q. Then, so far as you know to the contrary, Messrs. Pain and Tremaine were absolute pioneers in that undiscovered territory, were they not? A. So far as I know."

Does the Fleming patent infringe upon the claims of the Tremaine & Pain patent? With reference to the suggestion of appellant's counsel as to the presumption arising in favor of the Fleming patent as stated in Kokomo F. M. Co. v. Kitselman, 189 U. S. 8, 23, 23 Sup. Ct. 521, 47 L. Ed. 689, it may be briefly stated that there is in every case a prima facie presumption in favor of the validity of every patent issued by the patent office. Due heed and consideration must always be given by the court or jury, as the case may be, to this presumption, but the real question in all cases is whether or not the evidence in the case is or is not sufficient to overcome the prima facie presumption which the patent affords. Hays v. Sulsor, 1 Fish. Pat. Cas. 532, 534, 535; Fed. Cas. No. 6,271; Corning v. Burden, 15 How. 252, 271, 14 L. Ed. 683; Reckendorfer v. Faber, 92 U. S. 347, 355, 23 L. Ed. 719; Bates v. Coe, 98 U. S. 31, 40, 25 L. Ed. 68; Lehnbeuter v. Holthaus, 105 U. S. 94, 96, 26 L. Ed. 939; Miller v. Eagle Mfg. Co., 151 U. S. 186, 208, 14 Sup. Ct. 310, 38 L. Ed. 121; Boyd v. Janesville Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973; Ransome v. Hyatt, 69 Fed. 148, 16 C. C. A. 185; Wilgus v. Germain, 72 Fed. 773, 776, 19 C. C. A. 188.

It is claimed by the appellant that the Fleming construction has accomplished the result claimed to be obtained by the Tremaine & Pain patent, by substantially different means, and is constructed and operated differently; that Fleming not merely made improvements in many of the separate mechanisms which go to make up the patented device; that he accomplished the result by a new and different combination of elements differently arranged, and operating differently, and in part composed of entirely distinct and separate elements, unlike in form and operation; and that the appellees should be held strictly to the particular means as described in the several claims of the patent.

Tremaine & Pain made three generic claims for "mechanism controlled by each music sheet to regulate and control the movement of the other music sheet." This included the numberless species in which the skilled mechanic or future inventor might embody their creation. The other claims were for more specific features and elements. This method as to the different character of the claims was explained by this court in Von Schmidt v. Bowers, 80 Fed. 121, 147, 25 C. C. A. 323. The court said:

"By section 4888 of the Revised Statutes [U. S. Comp. St. 1901, p. 3383], it is provided that every inventor, when making his application for a patent, shall file in the patent office a written description of his invention; and, if the application be for a machine, he is required to explain the principle thereof, and the best mode in which he has contemplated applying the principle, so as to distinguish it from other inventions. But he is not necessarily limited to the one mode shown. The pioneer inventor is entitled to a generic claim, under which will be included every species included within the genus. In

addition to such generic claim, he may include in the same application specific claims for one or more of the species"—citing numerous authorities.

We copy for illustration claims 1, 2, 3, and 4, as follows:

"(1) In a mechanical musical instrument, in combination, two or more perforated music sheets, mechanism for operating each music sheet independent of the other in connection with an independent and separate organ, bank organ, or other musical instrument, and mechanism controlled by each music sheet to regulate and control the movement of the other music sheet or sheets, so that they all will travel together, to perform the music represented by each sheet synchronously or together.

"(2) In a mechanical musical instrument, in combination, two or more perforated music sheets, raceways, or tracker ranges over which said perforated music sheets are arranged to travel, one to each music sheet, air ducts or passages in each raceway or tracker range, arranged to communicate with an independent or separate set or series of sounding devices for the sounding of the same, and mechanism controlled and caused to be operated by each perforated music sheet, to regulate and control the travel of the other music sheet or sheets, for all the music sheets to travel together so that the music performed on the several musical instruments in connection therewith will be performed synchronously or together.

"(3) In combination, two or more sheets of flexible material, raceways, or rests over which said sheets are arranged to travel, one raceway to each sheet, and mechanism controlled and caused to be operated by each sheet, to regulate and control the travel of the other sheet or sheets, for said sheets to travel synchronously or together, over said raceways or rests.

"(4) In combination, a sheet of flexible material, a raceway or rest over which said sheet is arranged to travel, an air duct or passage in such raceway, a perforation in said sheet in line with said air duct, an air chamber, a pneumatic bellows in said air chamber in communication with said air duct or passage, a passage into said chamber from the outside, a bellows outside of said chamber, a passage forming communication with said passage leading to said chamber and said bellows, a valve connected to said pneumatic bellows adapted to close and open said air chamber passage, a lever connected by one arm to said outside bellows, a rotating shaft adapted to move back and forth longitudinally in its bearings and to be moved in one direction by the other arm of said lever, a spring bearing on said shaft, a disk or clutch on the end of said shaft arranged and adapted to be engaged with another clutch or any suitable operating device."

It will be observed that claims 1, 2 and 3, include the entire invention generically, in terms broad and general, while claim 4 is for a subcombination, and is confined to the mechanism for the stopping of one sheet. The other claims are for other specific features and elements. The argument on behalf of appellant is that in such a case the court should read into the three generic claims, the special features of the mechanical means prescribed for producing the result. To use the language of counsel, the court ought "to refer back to the specifications, and read into the claims those elements which are therein specified as being the means by which such functions are performed." The claims of a patent should be construed, where they reasonably may be, to cover the entire invention of the patentee; and where a patent contains several claims, some of which are limited to details, the others are, prima facie, not to be restricted by insisting that they contain, as necessary elements, the particulars which are specifically covered elsewhere. The general rule is, as stated by the court in Risdon I. & L. Works v. Trent (C. C.) 92 Fed. 375, 388,

that "Infringement cannot be avoided by reading into a broad claim of a patent specific devices claimed in narrower claims of the patent." See, also, Mast, Foos & Co. v. Dempster Co., 82 Fed. 327, 333, 27 C. C. A. 191; Bresnahan v. Tripp G. L. Co., 102 Fed. 899, 43 C. C. A. 48.

Tremaine & Pain conceived a new idea and stated it in their specifications in such a plain way that it could be readily adopted and employed by any one "skilled in the science to which it appertains" so as to lead to a practical and useful result. They clearly described their mechanical musical instruments, and the principles thereof by which they could be distinguished from all other inventions, and stated in concise language what they considered to be the best mode of applying these principles, and in their claims pointed out the parts and improvements which they claimed as their invention and discovery, and thus brought themselves within the essential requirements of the patent law. Their invention not only embraced the mechanical musical instruments and modes of construction and operation which they described in their patent, but included all mechanical musical instruments which might be so construed as to operate in substantially the same way by any equivalent means to accomplish the same results. By the express terms of the act of Congress the description of their device in their specifications, and the language of their claims, they were entitled to a patent for their "invention or discovery," and "their patent should be so construed as to give them all that they invented, discovered and claimed; nothing more, and certainly nothing less." Brush Electric Co. v. Electric Imp. Co. (C. C.) 52 Fed. 965, 972.

In the letters patent issued to Fleming it is stated that the invention has for its object a pneumatic regulator for musical instruments, and that "it consists of the construction, combination, and arrangement of devices," that are thereinafter specified and claimed. "My invention is more particularly designed to provide a pneumatic regulator for musical instruments in which plural music sheets may be simultaneously employed and whereby said sheets may be synchronously actuated." After stating that certain features of construction embodied in the present invention were embodied in two different patents issued to him, one on July 6, 1897, "for an electric attachment for musical instruments," the other March 28, 1899, "for an attachment for musical instruments," and explaining some of the features thereof, he states:

"My present invention is designed to provide an attachment in which plural sheets may be employed, the attachment in the present instance being designed to regulate the operation of the instrument or the movement of the music sheets so that corresponding notes shall be in unison or in perfect time and any liability of an uneven movement of the said sheets be avoided or corrected."

There are 10 claims in this patent. 1 reads as follows:

"In a pneumatic regulator for musical instruments, two independently-traveling music sheets, each provided with elongated and with shortened perforations arranged in pairs, and pneumatically-actuated mechanism governed by

said perforations arranged to regulate the travel of said sheets to cause said sheets to operate in unison, said mechanism provided with a controlling pneumatic, 1, with a valve provided with a spindle to govern the exhaust of said pneumatic, and with additional plural pneumatics to jointly actuate said valve spindle, substantially as described."

The others are for certain other features and specific details. Number 7 is here quoted for the purpose of general illustration:

"(7) In a pneumatic regulator for musical instruments, two traveling music sheets each provided with elongated and with shortened perforations arranged in pairs, clutch-actuated mechanism to carry said sheets, a tracker board for each of said sheets provided with two channels having communication therethrough governed by said perforations, pneumatics controlled by one set of perforations and channels governing said clutches, and additional pneumatic mechanism governed by the other set of perforations and channels and governing the first named pneumatic to regulate the travel of the sheets, substantially as set forth."

From an examination of the exhibits in evidence, the testimony given at the trial, and of the respective letters patent, we are of opinion that the Fleming patent clearly embodies the invention of Tremaine & Pain, and is an infringement of that patent. It is true that Fleming made several minor changes in the arrangement of his mechanism, and constructed some parts in a different manner, but throughout the whole the essential principles of the Tremaine & Pain patent exist. When the discovery was made and explained to the public by Tremaine & Pain, it could readily be seen by other inventive and mechanical minds that the means by which the result was produced were simple and plain, and that the result could be accomplished by slight changes in the construction of the mechanical musical device. It is apparent that Fleming, with his intimate knowledge of the construction made under the Tremaine & Pain patent, was able to make changes in some of the means used, and in making these changes he may have improved in some particulars upon the means used in the prior invention.

The rule is well settled that if two machines be substantially the same, and operate in the same manner, though they may differ in form, proportion and utility, they are the same in principle. As was said in Converse v. Cannon, 2 Woods, 7, Fed. Cas. No. 3,144:

"In passing upon the issue of infringement, the question to be determined is whether, under a variation of form or by the use of a thing which bears a different name, the defendant accomplished by his machine the same purpose or effect as that accomplished by the patentee, or whether there is a real change of structure or purpose. If the change introduced by the defendant constitutes a mechanical equivalent in reference to the means used by the patentee, and if besides being an equivalent, it accomplishes something useful beyond the effect or purpose accomplished by the patentee, it will still be an infringement as respects what is covered by the patent, although the further advantage may be a patentable subject as an improvement on the former invention."

See, also, Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935; Cantrell v. Wallick, 117 U. S. 689, 694, 695, 6 Sup. Ct. 970, 29 L. Ed. 1017.

In Blandy v. Griffith, 3 Fish. Pat. Cas. 609, Fed. Cas. No. 1,529, the court said:

"As long as the root of the original conception remains in its completeness, the outgrowth—whatever shape it may take—belongs to him with whom the conception originated."

In Walker on Patents, § 376, the author said:

"On the other hand, a defendant's machine may be better than that covered by the patent in suit; but if that superiority resulted from some addition to the latter, it will have no tendency to avoid infringement."

In Robinson on Patents, § 30, the author said:

"To the patentee belongs, not merely the exclusive right to what he has invented, but also the right to prevent others from using their own inventions, however valuable they may be, if they embrace a single one of his original ideas."

In Curtiss on Patents, § 320, the author, in discussing this question, said:

"The substantial identity, therefore, that is to be looked to, in cases of this kind, respects that which constitutes the essence of the invention, viz., the application of the principle. If the mode of carrying the same principle into effect, adopted by the defendant, still shows only that the principle admits of the same application in a variety of forms, or by a variety of apparatus, the jury will be authorized to treat such mode as a piracy of the original invention."

Our conclusions are that the court did not err in its findings and decree in case No. 1,235, and it necessarily follows that it did not err in granting the temporary injunction in No. 1,234. The order of the Circuit Court in 1,234 is affirmed, with costs. The decree of the Circuit Court in 1,235 is affirmed, with costs.