## AMERICAN BRAKE SHOE & FOUNDRY CO. v. HOADLEY BRAKE SHOE CO.

(District Court, D. Massachusetts. March 1, 1915.)

### No. 268.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—RAILWAY BRAKE SHOE.
    The Chipley patent, No. 651,435, for a railway brake shoe, which may be completely worn out by removing it from the brake head when partially worn, substituting a fresh shoe on the brake head, and attaching the partially worn shoe to the face of the fresh shoe, was not anticipated and discloses a useful, operative, and practical invention, made by the patentee, which is of a fairly broad character and covers shoes which are integral and continuous from end to end, as well as those made in two parts. Claims 4, 5, and 6 also *held* infringed.

2. PATENTS ☞131 — RIGHT TO PROTECTION. — DISCONTINUANCE OF MANUFACTURE.
    A patentee or his successor does not lose his right to protection under the patent, even if he does not continue manufacturing thereunder, unless an intention is shown to abandon the invention.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 188; Dec. Dig. ☞131.]

3. PATENTS ☞157—CONSTRUCTION—SCOPE.
    A patent should be construed, when it can be so construed, to cover the entire inventive thought of the patentee.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 229–232; Dec. Dig. ☞157.]

4. PATENTS ☞91 — PERSONS ENTITLED TO PATENTS — ORIGINAL INVENTOR — PRESUMPTION FROM GRANT.
    The issuance of a patent is prima facie evidence that the patentee was the original inventor of the thing patented, and the burden rests on a defendant to overcome such evidence by proof which at least is satisfactory to the court.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 121–123; Dec. Dig. ☞91.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the American 'Brake Shoe & Foundry Company against the Hoadly Brake Shoe Company. On final hearing. Decree for complainant.

Fish, Richardson, Herrick & Neave, of Boston, Mass., for plaintiff.
Briesen & Knauth, of New York City, for defendant.

HALE, District Judge. This bill in equity alleges infringement, by the defendant, of United States letters patent No. 651,435, issued June 12, 1900, for a railway brake shoe, to Gardiner W. Chipley, as patentee, and to Charles W. Armbrust, assignee of a one-half interest. The application of Chipley was filed January 18, 1900.

Claims 4, 5, and 6 are in issue, the charge of infringement relating only to those claims. They are as follows:

"4. A brake shoe provided in its wearing face with recesses adapted to receive the attaching and guide lugs upon the back of another shoe, substantially as described.

"5. A brake shoe provided in its wearing face with recesses adapted to receive the guide and attaching lugs on the back of another shoe, and with means for securing the two shoes together, substantially as described.

"6. A brake shoe having its wearing face and its back formed in parallel planes, so that the back of one shoe will fit the face of another shoe, and provided in its wearing face with recesses adapted to receive the attaching and guide lugs upon the back of another shoe, substantially as described."

Chipley describes two features of his invention. The first feature relates to the provision of a divided or two-part brake shoe, by which, he claims, certain advantages are attained. The second feature, concerning which this contention arises, relates to the provision of a brake shoe adapted to receive the back portion of a partially worn shoe, whereby brake shoes, partly worn out, may be used completely up, by attaching them to, and using them with, new shoes. In stating the advantages of the interlocking, interchangeable brake shoe, Chipley points out that all previous brake shoes, when worn down to a certain point, could be worn down no further without injury to the brake head; and so such brake shoe had to go to the scrap heap. Chipley testifies that he had frequently visited the scrap pile of the Rock Island road, and had there seen worn-out brake shoes. He had his attention called to the lack of economy in throwing away partially worn shoes, and tried to find a way to save this scrap by providing a brake-shoe construction which would enable a partially worn-out brake shoe to be attached to the face of a fresh shoe, and be completely worn out. To do this he brings together two counterpart shoes, an inner shoe attached to a brake head, and an outer shoe attached to the face of the inner shoe. To put the two shoes together, he provided lugs on the back for attaching the inner shoe to the brake head, and recesses on its face into which the lugs on the back of an exactly identical brake shoe fitted, by which the latter shoe could be attached to the face of the former shoe. The friction of braking the car wheel wore away the outer shoe entirely, and the inner shoe partially; then the inner worn shoe was removed from the brake head, a fresh shoe was attached to the brake head, the worn shoe was attached to the face of the fresh shoe, and the device was again put into use.

In his specification, Chipley points out substantially this method of using interlocking and interchangeable brake shoes. In a part of his specification he points out the advantages of the first feature of his invention relating to a divided or two-part brake shoe. In another part of his specification he describes the advantages of the second feature of his invention, with which feature we are now concerned. He alleges that this feature may be used with either the continuous or the divided shoe. He says:

"While I have illustrated and described in detail a simple and efficient method of attaching the worn shoes to the new ones by interlocking them together, my invention is not restricted in its broader scope to this particular method and means of attaching the old shoe to the new one, since, so far as I am aware, it has not heretofore been proposed to use up worn brake shoes by attaching them to new shoes in any manner whatsoever, and my invention therefore contemplates the employment of any suitable means for securing the old shoes to the new ones in the practical utilization of this idea.

"It will be understood that my invention has nothing to do with the particular construction of the body of the shoe—i. e., whether of solid cast metal or otherwise—or with the employment or nonemployment of 'inserts' in the wearing face of the shoe. Any of the various methods of constructing the body of the shoe and any of the usual inserts may be employed in connection with my invention without affecting the latter. It will also be understood that the second feature of my invention may be utilized in solid or continuous shoes, it being simply necessary for such purpose to provide suitable means for securing the old and new shoes together when assembled."

He makes it clear that his invention consists in the assembling of two interlocking shoes. He briefly points out the method of assembling:

"In assembling the parts, each half of the worn shoe is applied to and interlocked with the corresponding half of the new shoe independently of the opposite halves of the shoes, and when each half of the combined shoe has been thus assembled the two halves of the combined shoe are brought together end to end, and then secured to the brake head."

It will be seen that this description of assembling the two shoes necessarily involves interlocking half of a worn shoe with the corresponding half of a new shoe. The claims bring to the mind the picture of two shoes, the recesses of one shoe being adapted to receive the attaching and guide lugs upon the back of another shoe. Claim 6 distinctly expresses this feature; so that it is made clear that, if the patentee invented anything, it was the interlocking of two shoes identical in construction, and for the purpose described; and that he sought to do this either with divided shoes, or with continuous shoes. In his drawings he illustrates the two-part brake shoe, the first feature of his patent; in illustrating the second feature, he uses also the two-part brake shoe. He points out, however, that he intends his invention to be utilized either in the continuous shoe or in the divided shoe.

These defenses are relied upon by defendant: That Chipley's alleged invention was not new, in view of the prior art; that it was not useful, in that it was not operative, or capable of being put into use; that it has not been infringed by the defendant, for the reason that the patent should be so limited in its scope as to give the complainant the right to use only the divided brake shoe, whereas defendant's shoe is a continuous shoe; that, in any event, the patent is void, for the

reason that the alleged patentee, Chipley, was not the original and sole inventor, but that one Armbrust was the inventor.

[1] 1. Chipley's alleged invention, described in his patent, is a brake shoe which can be completely worn out, by removing it from the brake head, when partially worn, substituting a fresh shoe on the brake head, and attaching the partially worn shoe to the face of the fresh shoe. The defendant has cited several patents, claimed to be anticipatory of this invention. A certain British patent to Rendall issued in 1898 discloses a brake shoe with a face made up of removable and replaceable dovetailed sections. I do not think it necessary to consider the Rendall patent in detail. In some of its suggestions, I think, it comes nearer to being an anticipation of Chipley than any other patent cited in the prior art. It does not, however, disclose counterpart, interlocking shoes, nor anything which, I think, can be held to be anticipatory of the thought which seems to have been clearly in the mind of Chipley.

The Brownley patent of July, 1888, discloses recesses, or grooves, in the face of the brake head; but these grooves are for an entirely different purpose from those expressed in the Chipley claims. Interlocking brake shoes are not involved. The invention of Chipley is not suggested by the Brownley patent or by any other patent brought to my attention. So far as anything in the prior art is concerned, I think the three claims at issue in the Chipley patent must be held valid, and not anticipated.

[2] 2. On examination of the proofs, I cannot sustain the defendant's contention that the claims at issue do not disclose a useful, operative, and practical invention. The proofs convince me that Chipley's invention was useful and operative, that it was actually reduced to practice, and that it had a somewhat extended use. The specified form of brake shoe shown in the Chipley patent was manufactured, from 1900 to 1902, by the Lappin Brake Shoe Company, under a license. There was at that time a large sale of these shoes among railroads and car companies. The proofs show that since 1906 the complainant has not pushed business under this patent. But a patentee, or his successor, does not lose his right to protection under a patent, even if he does not continue manufacturing under the patent, unless an intention is shown to abandon his invention. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 430, 28 Sup. Ct. 748, 52 L. Ed. 1122.

The proofs are clear that the invention described in the claims at issue was capable of operation, and was actually put into operation. In practice, Chipley and his successors made use of a four-piece construction; they put upon the brake head two shoes, each shoe divided into two parts. It is urged that they never made a two-piece, interlocking shoe; that they never made a construction composed of two continuous or solid shoes. There is no doubt that Chipley and his successors thought the four-piece construction was better fitted for commercial use. The specific form of brake shoe which they did use and sell, however, was clearly useful and practical. I find that the claims at issue show an operative invention.

3. The question of infringement presents an important and interest-

ing issue. Upon this issue there is a sharp contention. The substance of the whole controversy is centered here. The defendant contends: That the patent law makes it incumbent upon every inventor to make such a description as to enable any person skilled in the art to construct the thing he undertakes to describe; that Chipley did not show anybody how to construct and use a double brake shoe, one undivided half of which is the carrying shoe and the other undivided half of which is the operating shoe, to be applied to the car wheel. The defendant insists that Chipley did not know how, and did not in his patent show anybody how, this could be done with a continuous brake shoe, and that, if his patent had any operative force, such force related only to the divided or two-part brake shoe. And the defendant says that where an inventor has produced two inventions so allied that they may properly be secured to him in one patent, and has described these inventions in the descriptive part of his specification, but has covered only one of them by his claims, then his patent is valid only as to one of these inventions and invalid as to the other. The defendant insists that the complainant must be limited to a structure which attaches a carrying shoe, made in two pieces, to a brake head, and an actuating or operating shoe, also made in two pieces, attached to the face of the first mentioned shoe; that this is the only device which is described in his patent; and that, if his patent is limited to this device, the defendant does not infringe.

The defendant's brake shoe, brought before the court for illustration, is composed of three parts: A brake head, a brake shoe fitted to the brake head, and a "starter" brake shoe on the face of the inner shoe. This outer shoe is used merely as a "starter"; it is grooved on its face to receive the flange of the car wheel. In practice, this "starter" shoe is worn away; and the inner shoe on the brake head is then partially worn away. The flange of the car wheel wears a groove on the face of the partially worn shoe, which is then removed; a fresh shoe, exactly like it before it was worn, is attached to the brake head; and the worn shoe is attached to the face of the fresh shoe, and the device is put into use. The "starter" shoe is used because the flange of the wheel bears against the shoe; therefore an ungrooved shoe could not be used at first against the wheel. After the flange wears a groove in the inner shoe, it is in condition to be used on the face of the fresh shoe. The shoe of the defendant is provided on its rear surface with attaching and guide lugs, by which it is to be attached to the brake head, and with corresponding recesses on its front face into which the lugs on the other shoe, to be secured to its face, fit; the two shoes are thereby fastened together. The learned counsel for the defendant thus describes its device:

"The defendant's carrying shoe is a one-piece shoe, having both faces inclined, and is connected with the brake head by dropping the inclined and tapered ribs on its back into corresponding inclined and tapered recesses in the face of the head. The actuating shoe is by similar ribs united to the grooved face of the carrying shoe. The parts thus assembled are firmly united by the action of the car wheel, and the corresponding jar on the parts. * * * The defendant's structure is covered by United States letters patent No. 937,069, issued to the defendant on October 17, 1909. * * * The in-

clination, of the concave face of each of the defendant's shoes, and of the brake head, and of the corresponding convex faces of the shoes, is particularly described and claimed in defendant's patent No. 937,068, also dated October 19, 1909."

The defendant's patent, No. 937,069, relates to the special form of the attaching guide lugs, and the corresponding recesses. In the specification, the patentee states the purpose of the patent as follows:

"This invention relates to improvements in a construction of railway car brake shoes and brake shoe supporting back or carrying head therefor; and one of the objects is to provide an improved construction of brake shoe back and complemental brake shoes which are susceptible after use of being interchanged, so that the one which was initially a rear brake shoe may, after a front brake shoe has been worn away and the rear brake shoe more or less worn, be for the moment removed from the brake shoe back while the fresh rear brake shoe is being mounted on the back, and then such partially worn shoe (formerly a rear shoe) interlocked on and carried by the newly provided rear shoe, to the end that practically, if not absolutely, all of every shoe is subjected to wear in its utilization of braking purposes, no portions or remnants being necessarily thrown away as scrap iron."

It will be seen that the specification in defendant's patent discloses substantially the same purposes disclosed in the Chipley patent, so far as relates to interlocking shoes, and to a structure intended to wear out completely the operating shoe, in order to save scrap. The defendant contends that the complainant's patent should be limited to a divided shoe; that the defendant has a perfect right to its invention within the scope of its claims, and does not infringe the complainant's patent; that Chipley and his successors never showed to the public how it could put two solid brake shoes together; that its two continuous shoes, exhibited to the court for illustration, do not fit each other; that defendant has pointed out a practical, operative way of combining the brake head with two solid brake shoes, by means of ribs and grooves; that, by its perfect model and by its working devices, it has disclosed to the court an operative and practical method of doing what the claims of its patent call for; that the complainant should have the benefit of the structure it has distinctly described, involving the use of only a divided brake shoe, and the putting together of two divided brake shoes; and that it should be so limited, even though the patentee has said in his specification that his invention may be utilized in solid or continuous shoes.

[3] Upon a careful examination of the record, I cannot limit the Chipley patent as contended for by the defendant. The proofs persuade me that Chipley made an invention of a fairly broad character, and therefore is entitled to a fair use of equivalents; that such invention discloses a brake shoe which can be completely worn out by removing it, when partly worn out, from the brake head, by substituting a fresh shoe on the brake head, and then attaching the partially worn shoe to the fresh shoe; that nothing like this is disclosed in the prior art; that the invention contemplates the employment of any suitable means for securing the old brake shoe to the new brake shoe. I think the court must give some force to the patentee's expressed intention that his invention may be utilized in solid or continuous shoes. Giving complainant's patent this somewhat broad scope, it is clearly infringed

by the defendant. It may be that, in specific elements, the defendant has made improvements on Chipley; but it has clearly infringed, before it has improved. The same may be said of certain other patents referred to by counsel, and now, as shown by the record, held by the complainant. All these patents are clear attempts to improve in specific features upon Chipley's invention. The inventive thought of the patentee should not be defeated by the fact that the patentee sought to avail himself of two features in his patent. The patent was his contract with the public. It should be so interpreted as to express his whole intention. A patent should be construed, when it can be so construed, to cover the entire inventive thought of the patentee. Los Angeles Co. v. Æolian Co., 143 Fed. 880, 885, 75 C. C. A. 88; Anderson, etc., Works v. Potts, 108 Fed. 379, 383, 47 C. C. A. 409; National Tube Co. v. Mark, 216 Fed. 507, 521, 133 C. C. A. 13; Boyer v. Keller Tool Co., 127 Fed. 130, 134, 62 C. C. A. 244; Converse v. Cannon, 2 Woods, 7, Fed. Cas. No. 3,144; Curtis on Patents, § 320; Walker on Patents, § 376.

I am constrained to find that the defendant infringes claims 4, 5, and 6 of the patent in suit.

[4] 4. The defendant contends that Chipley was not the original and sole inventor of the invention described in the claims at issue; but that one Armbrust was the inventor, and that hence the patent is invalid, it having been issued to a party who was not the inventor. The proofs present much contradictory evidence upon this point. The issue of the patent to Chipley is prima facie correct and valid. The burden is upon the defendant to overthrow it by clear proof; or, as Judge Putnam says, "to put it in the mildest way, by proofs which are satisfactory to the court." Eastern Paper Bag Co. v. Continental Paper Bag Co. (C. C.) 142 Fed. 479, 500; American Bell Telephone Co. v. United States, 68 Fed. 542, 15 C. C. A. 569; Id., 167 U. S. 224, 251, 17 Sup. Ct. 809, 42 L. Ed. 144. Upon a careful study of the record, I do not find the proofs satisfactory. They are not sufficient to sustain the burden upon the defendant. On the other hand, the proofs are persuasive that the prima facie issue of the patent to Chipley was correct and valid.

I am of the opinion that Chipley was the original and sole inventor of the patent in suit; that claims 4, 5, and 6 of the patent are valid; that they present a new and useful invention of a somewhat broad character; that they have not been anticipated; and that they have been infringed by the defendant.

Let a decree be presented, consistent with this opinion.

Plaintiff's draft decree to be filed on or before March 4, 1915.

Defendant to file corrections on or before March 10, 1915.

Decree to be settled March 16, 1915.